[Crim. No. 5983.   Second Dist., Div. One.   June 25, 1958.]

THE PEOPLE, Respondent, v. WARREN ELWOOD FLUERY, Appellant.

Fredric A. Spindell, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Joe J. Yasaki, Deputy Attorney General, for Respondent.

LILLIE, J.—Appellant was charged by information with a violation of section 459 of the Penal Code and convicted by a jury of second degree burglary. His motion for new trial was denied and he was sentenced to the state prison. On this appeal from the judgment of conviction and order denying motion for a new trial, appellant submits that the trial court

erred in considering certain impeaching evidence on the motion and in giving at the trial two abstract jury instructions dealing with admissions and confessions.

The record discloses that on October 26, 1956, at about 8:30 p. m., appellant entered the Murphy Camera Shop in Whittier where he talked to Mr. Murphy about cameras for approximately one-half hour. When he left he entered a Ford car, bearing license BHV 052, parked in front near the shop and in which a woman was seated. They drank from a bottle, after which appellant got out of the automobile and for three or four minutes stood behind it facing the front window of the camera shop. He returned to the car, drove it forward 15 to 20 feet and stopped. Appellant's car was in this location at approximately 9 p. m. Mr. Murphy secured the shop and left shortly after 9 p. m. The next morning, police found the shop had been entered and money, equipment and cameras were missing. One of the fingerprints found in the shop matched appellant's right ring finger.

On October 29th, appellant's wife, under the name of "Ann Zunt," giving a fictitious address, sold several of Murphy's cameras to various loan companies in San Diego. In attempting to sell one to the Boston Jewelry and Loan Company she was arrested. Police waited at a nearby parked car, bearing license BHV 052, and within a few minutes appellant appeared producing an identification card bearing the name "Warren Washington Elwood." He told police he lived in Cypress and that the husband of the woman who sold the cameras had left her and she was selling them for rent money. The officer arrested appellant and searching the car found five cameras and equipment belonging to Murphy.

On November 2, 1956, Officer Rasband had a conversation with appellant at the Whittier police station wherein he stated substantially as follows: On October 26, 1956, at about 6:30 p. m., he took his wife to a Whittier doctor, remaining in the car about one and one-half hours drinking. When she returned to the automobile, he drove seven or eight blocks and parked at the curb. His wife walked around to the driver's seat and drove home. He was not drunk, just "tight," but he did not recall getting out of the car and entering the store. At home he had dinner, watched television and went to bed and did not leave the house until 2 p. m. the following day, October 27th. That afternoon he went to Lloyd's Bar in Whittier where he met Charley Manners and another man, whose name he did not know, who sold him the cameras for

$170 in cash, part of which he removed from a glass jar he had buried in the floor of his garage. Manners told him the cameras were not stolen, although later he suspected that they had been. Around noon on October 29th, appellant and his wife drove to San Diego. He told her to sell the cameras and use the name of "Ann Zunt" and a fictitious address.

Officer Rasband thereafter searched defendant's garage and found no indication of any holes or other excavations in the floor.

Appellant did not testify at the trial. Defense witnesses included his wife and George Mason. Appellant's wife testified that on October 26th appellant drove her to the doctor's office and waited for her in the car, to which she returned around 6:15 p. m. They drove two miles and parked at which time he went into the Murphy Camera Shop, remaining for 15 or 20 minutes. She thereafter accounted for appellant's whereabouts until 5:30 the next morning. On October 29th they drove to San Diego where she sold several cameras under the name of "Ann Zunt." George Mason testified that at 7:30 p. m. on October 27th, appellant met him and Charles Manning (Manners) at a bar in Whittier called Lloyd's, from whom appellant bought the cameras for $170.

In rebuttal Officer Merritt testified that George Mason had previously told him he had not been in Whittier until the latter part of December, 1956.

Appellant urges that the trial court erred in considering impeaching evidence, for which no proper foundation was laid, at the hearing on his motion for a new trial. Appellant's motion was made on the ground of newly discovered evidence in support of which appellant produced two affidavits, one executed by George Mason who stated that he alone had committed the burglary, and the other by his counsel alleging due diligence. In addition, appellant testified that at the time of the trial he was unaware of the fact that Mason had committed the crime. George Mason was not present at the hearing and did not testify.

In opposition to the motion for new trial, the prosecution called several witnesses, among whom was Thomas Lawlor, a United States postal inspector, and Arthur Johnson, a district attorney's investigator. Lawlor testified that after the burglary he took a sworn statement from Mason, which was received as People's exhibit Number 2, wherein Mason in effect denied committing the crime. Johnson testified that after Mason executed the affidavit offered by the defendant on

the motion, he talked to Mason about the burglary and, upon being questioned, Mason made certain statements concerning the commission of the crime and the appearance of the premises which were inconsistent and incompatible with known facts. Appellant objected to the testimony of Lawlor and Johnson and the admission of People's exhibit Number 2, on grounds of hearsay and that no proper foundation for impeachment had been laid.

Section 1181 of the Penal Code provides that the court may, upon defendant's application, grant a new trial when new evidence is discovered material to the defendant and which he could not with reasonable diligence have discovered and produced at the trial. ■ In determining such a motion, an enlarged discretionary power is committed to the trial court (*People* v. *Coronado,* 57 Cal.App.2d 805 [135 P.2d 647] ; *People* v. *Greenwood,* 47 Cal.2d 819 [306 P.2d 427] ; *People* v. *Beard,* 46 Cal.2d 278 [294 P.2d 29]) and a reviewing court will not disturb its ruling unless a clear and unmistakable abuse of discretion is shown. (*People* v. *Coronado, supra*; *People* v. *Greenwood, supra*; *People* v. *McGarry,* 42 Cal.2d 429 [267 P.2d 254] ; *People* v. *Gompertz,* 103 Cal.App.2d 153 [229 P.2d 105].) ■ In determining what constitutes an abuse of discretion, it should be borne in mind that the claim of newly discovered evidence warranting a new trial is looked upon by the courts with distrust and disfavor. (*People* v. *Greenwood, supra*; *People* v. *Yeager,* 194 Cal. 452 [229 P. 40] ; *People* v. *Mandell,* 48 Cal.App.2d 806 [120 P.2d 921].

■ Section 1181 further provides that in support of a motion for new trial on the ground of newly discovered evidence, the defendant must produce at the hearing the affidavits of witnesses by whom such evidence is expected to be given. In line with this requirement, and in spite of the hearsay nature of affidavits, our courts have always held that in determining such a motion the trial court may consider counter-evidence by way of affidavit bearing upon the credibility of those whose affidavits are used in support of the motion. (*People* v. *Byrne,* 160 Cal. 217 [116 P. 521] ; *People* v. *Sing Yow,* 145 Cal. 1 [78 P. 235] ; *People* v. *Fice,* 97 Cal. 459 [32 P. 531].) This is to aid the court in determining the weight to be given to the affidavit offered on the motion, the truth of the matters shown thereby and the materiality and probability of the effect of them if believed to be true. (*People* v. *Byrne, supra, People* v. *Weber,* 149 Cal. 325 [86 P. 671].)

■ Since it is clear that contradictory and impeaching

evidence may be presented by way of affidavit, it would appear that the rule of evidence that a witness cannot be impeached for prior inconsistent statements until a proper foundation has been laid is necessarily inapplicable. In the instant case, affiant George Mason, not having been present at the hearing and not subject to cross-examination, there was no way in which a foundation could be laid. We do not believe under these circumstances that the prosecution must find the defendant's affiant, which in some cases would be impossible, bring him to court and call him to the stand in order to lay such a foundation before it can present impeaching evidence. In the case of *People* v. *Peyton*, 47 Cal.App.2d 214 [117 P.2d 683], the reviewing court affirmed an order denying a motion for a new trial on the ground of newly discovered evidence where the trial court at the hearing considered a counter-affidavit which impeached the affiant in defendant's supporting affidavit. The defendant there produced the affidavit of one Ward who swore he had participated in the robbery charged. In denying the motion, the trial court, as here, considered the counteraffidavit of a police officer wherein he alleged that he interviewed Ward prior to the hearing who denied being involved. Nothing in this opinion indicates a foundation to impeach Ward was laid prior to the introduction of the counteraffidavit. Since the motion appears to have been heard entirely on affidavit, such foundation obviously could not have been established. Although impeaching counter-affidavits were used in the Peyton case, in the instant case witnesses in opposition to the motion took the stand. The difference does not seem material because in neither case was defendant's affiant present. Since the use of affidavits is required under section 1181 of the Penal Code, the rule of evidence requiring the laying of a foundation for impeachment must be relaxed. A rigid application of the rule would work a hardship on the party opposing the motion as that party would be required to bring affiant into court in order to lay such a foundation. This result is not reasonable.

Appellant's argument that the same rules of evidence, including those relating to hearsay and impeachment which are applicable in the trial of a matter, apply in a hearing on a motion for new trial, completely overlooks the fact that section 1181 of the Penal Code requires the production of affidavits. This obviously contemplates hearsay which the authorities have uniformly held can be considered by the trial court for the purposes of the motion. In fact, the trial

judge in the instant case made it clear that although any conversation with Mason was hearsay, it was admissible as going to the credibility of Mason since he had submitted an affidavit. The court, in considering the testimony for this limited purpose, stated: ''That's the purpose of this hearing; one of the purposes of this hearing, to determine the credibility of the maker of that affidavit.'' Had affiant Mason been present and testified, he could have been examined by the prosecution concerning the manner in which he allegedly perpetrated the burglary, which testimony could have been controverted or impeached by facts showing the burglary had been committed in a different manner. However, since Mason was not present, the only way in which the details could be brought before the court was by affidavit, or testimony of Johnson. The court considered the testimony of Johnson only for the limited purpose of determining the credibility of Mason.

We believe the court below properly considered the testimony of the witnesses and Exhibit 2, and that no abuse of discretion is manifest.

■ Appellant finally urges that the trial court erred in giving two instructions which were abstract in that they had no application to the evidence adduced at the trial. He does not contend that the instructions are erroneous in substance. The two instructions referred to are regular California Jury Instructions Criminal, numbers 29 and 29-D. Number 29 defines a[1] ''confession'' and ''admission.''

---

[1]Evidence has been received in this case tending to show that on ((an occasion))* (occasions) other than this trial the defendant himself made ((a statement)) (statements) tending to prove his guilt of the alleged crime for which he is on trial.

(A statement thus made by a defendant may be either a confession or an admission.)

A confession is a statement that was made by one who is a defendant in a criminal trial, at a time when he was not testifying in that trial, by which he acknowledged certain conduct of his own that constituted a crime for which he is on trial, a statement which, if true, discloses his guilt of that crime and excludes the possibility of a reasonable inference to the contrary.

((If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider not only all the circumstances immediately connected with the making of the statement, as shown by the evidence, but also all other evidence bearing reasonably upon the question.))

(An admission is something less than a confession in that it does not concede so much pointing toward defendant's guilt, and does not alone,

---

*Matter in double parentheses indicates strike-out matter.

The fourth paragraph of instruction 29 instructing the jury what it must decide in the event it finds that a confession was made was stricken and was not read.

Instruction 29-D admonished the jury to "view with caution the testimony of any witness which purported to relate an oral admission of the defendant or an oral confession by him."

It is clear that although certain admissions were made by appellant which became part of the evidence, no confession was offered. It is appellant's claim that the giving of instructions 29 and 29-D led the jury to believe a confession existed and was part of the evidence.

Considering the entire record, we do not think that the giving of the two instructions could reasonably have led the jury to believe that evidence of a confession existed. Apart from instruction 29 defining the terms "confession" and "admission," and cautionary instruction 29-D, no other instruction was given relating to confessions. In striking the fourth paragraph of instruction 29, the trial court was most careful not to inject an issue that did not exist.

Referring first to the cautionary instruction relating to an oral admission or confession of defendant, it was not only proper, but should have been given, since there was evidence of certain admissions. (*People* v. *Southack*, 39 Cal.2d 578 [248 P.2d 12].)

Instruction 29, as given, does no more than define the terms "confession" and "admission." A reading of the entire instruction discloses that the definition of a confession was included only in order to properly define an admission. An admission is defined therein in terms of, and as differing from, a confession as is evidenced from the first paragraph of the instruction which begins: "An admission is something less than a confession in that. . . ." Nothing in the instruction advises the jury that a confession is in any way involved in the evidence at bar, or what the jury is to do in the event it finds one to exist; nor does it infer that the jury could find one from the evidence. This is not an instruction covering a "confession" as such. No instruction governing "confes-

---

even if true, support a deduction of guilt. It may consist of any statement or other conduct by a defendant whereby he expressly or impliedly acknowledged a fact that contributes in some degree to the proof of his guilt of an alleged crime for which he is on trial, and which statement was made or conduct occurred outside of that trial.)

(If you should find that a confession or an admission was false in any particular, it remains, nevertheless evidence for your consideration in connection with all other evidence in the case, to be given such significance and weight as your judgment may determine.)

sions'' exclusively was given, and the objectionable portion of instruction 29 referring to a confession in the evidence was deleted. The two instructions read were not abstract; nor do we believe that the jury could have reasonably implied that a confession was involved. They injected no issue unwarranted by the evidence, and did not unduly emphasize a confession as against an admission. We find no error in the giving of these two instructions.

The judgment and order denying motion for new trial affirmed.

White, P. J., and Fourt, J., concurred.