[Crim. No. 7068.   Second Dist., Div. Three.   Aug. 9, 1960.]

THE PEOPLE, Respondent, v. STEPHEN CANADA, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Edward B. Olsen and Richard W. Erskine, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert M. Sweet, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury convicted defendant of attempted robbery. Motion for a new trial was denied. Defendant appeals from the judgment and order denying a new trial. It is conceded the evidence is sufficient to sustain the verdict. The sole specification of error is that the court abused its discretion in denying a new trial.

Oscar Hatcher, a foreman at Douglas Aircraft, testified that about 4 p.m. on Friday, May 22, 1959, he parked his car in the parking lot of Bank of America at Holmes and Florence Avenues. He rolled up the windows, locked the car, and went into the bank to cash a check. He cashed the check, returned to the car, got in, and rolled the window down on the driver's side. He started the motor, placed the car in reverse, and reached over to release the emergency brake. As he did, he was "hit on the side of the head" by someone's fist. The person who hit him was a man. The man was standing outside

the window of the car, demanded Hatcher's money, swore at him, and struck him twice more. Hatcher noticed the man had a piece of paper in his hand. After the third blow the man opened the car door. Hatcher depressed the accelerator and the car "jumped back," throwing the man to the pavement. Before Hatcher could stop the car, the man got up and ran across the street. Hatcher testified defendant was the man who hit him. He had never seen defendant before that time. After the man left, Hatcher and the bank manager found a slip of paper on the driver's side of the front seat of Hatcher's car. The slip of paper was a traffic citation issued to defendant on May 19, 1959. Hatcher testified he next saw defendant in a police line-up about August 15, 1959. Defendant was one of three men in the line-up, all Negroes.

Deputy Sheriff Vaughn saw defendant in jail on August 15, 1959. He had the traffic citation with him. He questioned defendant about the citation. Defendant said he had the citation in his wallet and he had lost the wallet.

The defense was an alibi. Defendant testified: on the day and at the time of the attempted robbery he was at his home at 9318 South Central Avenue; his cousin's wife and her cousin lived there and both were there; he spent the afternoon principally in helping his cousin's wife around the house; he recalled this particular afternoon because the lady who lived next door gave a party that night; he was not at the scene of the attempted robbery; he received the traffic citation on May 19 and placed it in his wallet; he lost the wallet sometime between May 19 and 24.

Willie Pearl Mobley testified she lived at 9318 South Central Avenue on May 22, 1959; on that date defendant was living there; Manuela Hegwood, her cousin, was also living there; defendant did not leave the vicinity of the apartment that afternoon; the reason she remembers is they were washing some clothes and also washed a big carpet which covers just about the whole floor; she and her cousin could not take the carpet outside so they had to have defendant help them; defendant helped them take the carpet out and hang it on the clothesline; the lady next door gave a party that night and there was some conversation with defendant about the party.

Dorothy Louwd testified she was living in apartment 3 at 9318 South Central Avenue on May 22, 1959; her apartment was in the same building as that occupied by defendant, Pearl Mobley, and Manuela Hegwood; she saw defendant at the apartment on May 22, in the afternoon; the reason she re-

members was because Pearl and Manuela were washing and she (Dorothy Louwd) was teasing defendant because he was helping them hang up clothes and the big rug; after the washing was done she asked defendant to come over and help her straighten up for a while because she was giving a party that night; defendant went over to her apartment and stayed several hours before the party; the party was in honor of her husband's birthday; his birthday was May 2; the party was not held until May 22 because her husband was in the service and he did not come home until the weekend; the party was on a Friday.

The verdict was returned on November 2, 1959. The motion for a new trial was made on the ground of newly discovered evidence. In support of the motion defendant filed four affidavits: one by Buford Lee Beard; one by Edward B. Olsen, the Deputy Public Defender who represented defendant at the trial; one by defendant; and one by Marion J. Armstrong. In his affidavit, dated November 24, 1959, Beard stated that if called as a witness he would testify: on Wednesday or Thursday, about the 19th of May, 1959, he found a wallet containing traffic citations and other papers bearing the name "Stephen Canada"; he compared the citations with one which had recently been issued to him (Beard) and put them all in his pocket; on Friday afternoon, a few days later, he went to a bank on Florence Avenue three or four blocks from Compton; his companion, Gerald Cast, went into the bank while he waited in the car on the bank's parking lot; a man in an unusual make of car tried to park on the right-hand side of his (Beard's) car; the space was too narrow and the fender on his car was scraped; both drivers got out of their cars and each requested the other's driver's license; he did not have a license so he gave the man a traffic citation that was in his pocket. Inadvertently, he had apparently given the man defendant's citation rather than one issued to himself; there was some discussion, a fight started, several blows were struck, and he got in his car and left; he did not know defendant until he met him in the county jail. In the affidavit Beard gave some description of the man with whom he had the discussion.

In his affidavit Mr. Olsen stated: in interviews prior to the trial and at the trial defendant stated he had lost his wallet containing traffic citations and other papers sometime between May 19 and May 24, 1959; on November 20, 1959, defendant told him that several days previously he had met for the first

time and talked to another prisoner in jail by the name of Beard; defendant told him (Mr. Olsen) that Beard told him (defendant) he had found defendant's wallet, had removed one or more traffic citations from it, and about the date and the place where the attempted robbery took place he (Beard) had handed one of the traffic citations to a man in a bank parking lot; November 20, 1959 was the first time he (Mr. Olsen) had any knowledge of Beard.

In his affidavit defendant stated: he had never known Beard until he met him in jail about the 16th or 17th of November, 1959; at that meeting Beard learned his name and told him he had found defendant's wallet and had given a traffic citation from the wallet to a man in a bank parking lot with whom he had had a fight on a Friday afternoon late in May 1959; he immediately contacted the jail chaplain and requested that his probation officer and his parole officer be notified to get in touch with him so that he could have the information given to the court; he never heard from either the probation officer or the parole officer; he had no knowledge of the facts related to him by Beard until he first met him in the county jail.

In her affidavit Marion J. Armstrong stated: she had been going with defendant at the time of his arrest in August 1959; sometime about September she saw Beard on the street and mentioned she had been visiting Stephen Canada in jail; Beard asked what he was in jail for and she said it was for trying to take a man's money and that a traffic ticket belonging to defendant had been found at the scene; Beard said, "Well, that's too bad—it sounds like he got picked up on one of my beefs"; Beard told her he had asked a man for his money over on Florence, had hit the man, then ran, and had dropped a piece of paper with defendant's name on it; Beard told her he had found defendant's wallet and that he would give the wallet to her; Beard gave the wallet to her and she still has it. The People objected to the Armstrong affidavit on the ground it was hearsay. The objection was sustained. The conversation between Beard and Armstrong was obviously hearsay. However, the fact that Beard did give Armstrong the wallet and that she still has it is not hearsay.

In opposition to the motion the People called Hatcher to the witness stand. Hatcher testified he had read Beard's affidavit; he had no knowledge of the incidents therein described; he had never seen Beard before December 3, 1959, the date the motion was heard. The People called defendant

to the stand. Defendant testified: he did not know Beard personally prior to meeting him in the county jail on November 16 or 17, 1959; he may have seen him. During a part of the hearing of the motion Beard was present in court. He was not called on to give oral testimony for the reason his counsel was not present.

As stated earlier, the motion for a new trial was denied.

■■■ These requirements must be fulfilled for the granting of a new trial on the ground of newly discovered evidence: (1) the evidence and not merely its materiality must be newly discovered; (2) the evidence must not be merely cumulative; (3) a different result must be probable on a retrial of the cause; (4) the party could not with reasonable diligence have discovered and produced it at the trial; (5) these facts must be shown by the best evidence which the case admits. (*People* v. *Green,* 180 Cal.App.2d 537, 544 [4 Cal.Rptr. 304].)

■ The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court. (*People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29].) ■ It is well settled that a reviewing court will not interfere with the action of the trial court except on a clear showing of an abuse of discretion. (*People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427].)

■ Unless a clear case of abuse is shown and unless there has been a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Estate of Hart,* 119 Cal.App.2d 310, 318 [259 P.2d 703].)

■ The rule that a trial judge is not required to accept as true the sworn testimony of a witness applies to affidavits. (*Lohman* v. *Lohman,* 29 Cal.2d 144, 149 [173 P.2d 657]; *People* v. *Bannister,* 153 Cal.App.2d 480, 484 [314 P.2d 577].)

■ Where an issue is tried on affidavits, or partially on affidavits and partially on oral testimony, the rule on review is that the testimony or those affidavits favoring the contention of the prevailing party establish the facts stated therein and all facts which reasonably may be inferred therefrom; and where there is a substantial conflict in the facts stated, the trial court's determination of the controverted facts will not be disturbed. (*Bailey* v. *County of Los Angeles,* 46 Cal.2d 132, 137 [293 P.2d 449].)

The trial judge may have deemed the affidavits of defendant and Beard to be not worthy of belief. Further, the statements of Beard in his affidavit did not in fact contradict the evidence offered by the People. According to Beard, he

drove to a bank parking lot about 2:30 or 3 p.m. on the date of the attempted robbery and there had an altercation with a man driving an unusual model car which he guessed to be a 1949 or 1950 Hudson or Lincoln. He described this man as being 6 feet 1 inch tall, weighing about 225 pounds, about 30 to 35 years of age, with brown hair. Hatcher testified at the trial he was driving a 1956 Packard and the attempted robbery occurred sometime after 4 p.m. During the hearing on the motion for a new trial it was noted that Hatcher had gray hair and was over 50 years of age. On the hearing of the motion Hatcher testified he had not been involved in any fender-scraping incident as described in Beard's affidavit. When Beard appeared before the court, Hatcher testified he had never seen him before. On cross-examination Hatcher testified that Beard could not possibly have been the man who attempted to rob him. Counsel for defendant then asked if Hatcher gave his testimony knowing that it might send an innocent man to jail and believing he could not possibly have made a mistake. Hatcher replied this was right.

No abuse of discretion is shown from the fact that the trial court chose to decide the motion in accordance with the testimony of Hatcher rather than on the affidavits submitted by defendant and his testimony. We may not disturb the action of the trial court.

In this proceeding defendant has filed a petition for writ of error *coram nobis*. The petition is based on the proposition that Beard is guilty of the crime of which defendant was convicted. Attached to the petition is a sworn statement of Beard dated February 15, 1960, in which Beard at some length confesses to having committed the attempted robbery of Hatcher. The petition for writ of error *coram nobis* is premature. (Pen. Code, § 1265.)

The judgment and order denying a new trial are affirmed. The petition for writ of error *coram nobis* is denied without prejudice.

Shinn, P. J., and Ford, J., concurred.