[Crim. No. 4088.   First Dist., Div. One.   June 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. BOBBY GAINES, Defendant and Appellant.

Michaels & Bernstein for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from order denying new trial, presenting solely the contention that the trial court abused its discretion in denying defendant's motion for new trial.

### RECORD

Defendant was convicted of robbery in the first degree. He appealed from the judgment and from the order denying his motion for new trial. (*People* v. *Gaines* (1961) 192 Cal. App.2d 128 [13 Cal.Rptr. 359].) We there held that the judgment should be affirmed, but that the trial court erred in denying defendant a continuance to permit him to obtain affidavits to support his contention that there was newly discovered evidence warranting a new trial. We reversed the order denying new trial and remanded the cause to the superior court to proceed with the motion for the new trial. After a hearing in accordance with the dictates of our opinion, the trial court once again denied the motion for a new trial.

## No Abuse of Discretion

A brief review of the evidence at the trial taken from *Gaines,* pages 129-130, is in order. At approximately 7:45 p. m. October 28, 1959, two men, one armed with a revolver, obtained about $100 by the robbery of Mrs. Patricia Barner, a ticket-booth cashier at a drive-in theater. The two men drove to the booth in a pale green older model General Motors car. Mrs. Barner saw them seated in the front seat, both with nylon stockings over their faces. One held a gun and asked her for money. The driver got out of the car, went to the side of the booth, reached in and took certain moneys. He asked if there was anything else. She gave a negative answer. She heard him say, " 'Now don't forget the count'. . . ." As the men drove away, Mrs. Barner observed the license number of the car. Later she identified a car found by the police as the one used in the robbery. An examination of a car belonging to Wendell Lewis, arrested with defendant, disclosed a fully loaded .22 caliber automatic pistol underneath the spare tire, a nylon stocking in the hub cap, and some ammunition in the glove compartment. Lewis admitted the robbery and implicated defendant. Later Lewis gave a second statement which was recorded. When the officers played the recording of this statement, defendant made statements which we held were not admissions against interest and should not have been admitted in evidence. At the trial, most of the recording was read to the jury.

Defendant claimed an alibi which was supported by six witnesses. Shortly after the robbery Patricia Barner examined 28 photographs and recognized the defendant's as being that of one of the robbers; she picked defendant out of a lineup of five men. At the trial she identified both Lewis and defendant as the men who robbed her, although at the preliminary examination she indicated that defendant's voice seemed different than on the night of the robbery. Nevertheless her identification of defendant at the lineup, from the pictures and in court, was positive.

On the rehearing defendant produced Lewis' affidavit. In his affidavit, Lewis admitted the robbery. He verified defendant's story that he had seen defendant before and after the robbery at Tony's Place, where the six other witnesses placed defendant. He claimed that defendant was not his companion in the robbery; that his accomplice's name, "as far as I know, is Dave Rielly." He had met Rielly three weeks before, and Rielly had told him that he had escaped from an institution

in Oklahoma. Lewis further stated that he had maintained silence when defendant was "mistakenly identified by two witnesses" because he wanted to get even with defendant who he thought had informed about his possession of the gun. He also had thought the jury would find defendant innocent which would afford him an excellent chance of being found so, too. Rielly, according to Lewis, was about Lewis' age, about 5 feet 8 inches tall and light complected. In addition, Lewis stated that Gaines and he "had done something together about four or five years ago. . . ." Lewis indicated that if a new trial were had he would testify in accordance with his affidavit.

Detective Sergeant Hutchings who had investigated the robbery, in his counteraffidavit made the following statements: He had known defendant and Lewis for the past seven years; they had participated in several burglaries and petty thefts in 1954. The information that led to their arrest came from Mrs. Mayes and her son. Mrs. Mayes told Hutchings that between 5 and 6 on the night of the robbery Lewis and defendant came to the Mayes home; that Lewis stated that he wanted to borrow a pair of nylon stockings. She noticed "that they had in their possession a pistol." Her son Edward told her that defendant and Lewis had asked him to go on a robbery. Edward told Hutchings substantially the same story as did his mother. The son is now deceased. Mrs. Mayes is an itinerant worker, whose whereabouts are unknown. Lewis told Sergeant Hutchings that "they" had acquired the nylon stockings from Mrs. Mayes but Lewis did not know whether defendant came into the house or remained in the car while the stockings were being obtained. Lewis' description to Hutchings of Rielly was 25 or 26 years old, 5 feet 10, reddish and blond hair, 140-150 pounds, light complexion.

The authorities have uniformly held that hearsay can be considered by the trial court on a motion for new trial of this type. (See *People* v. *Fluery* (1958) 161 Cal.App.2d 630, 635 [327 P.2d 47].) "[I]n spite of the hearsay nature of affidavits, our courts have always held that in determining such a motion the trial court may consider counter-evidence by way of affidavit bearing upon the credibility of those whose affidavits are used in support of the motion. [Citations.]" (*Idem*, p. 634.)

Hutchings investigated the story about Rielly. Lewis told Hutchings that he met Rielly only about a week before the

robbery, and doubted if he could recognize him again. A check of the California Bureau of Criminal Identification and Investigation and the Federal Bureau of Identification showed that no Rielly had escaped from an Oklahoma institution.

There is no question that a motion for new trial is addressed to the sound legal discretion of the trial court and its action will not be disturbed on appeal except where an abuse of discretion is clearly shown. (*People* v. *Gilbert* (1944) 62 Cal.App.2d 933, 937 [145 P.2d 924]; *People* v. *Williams* (1962) 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].) "It is also well settled that such motions are looked upon with disfavor. . . ." (*Idem*, p. 270.) "As stated in *People* v. *Greenwood, supra,* 47 Cal.2d 819 [306 P.2d 427], at page 821, the claim of newly discovered evidence as a ground for a new trial is uniformly 'looked upon with disfavor,' for there must be an end to litigation." (*Idem*, p. 274.)

The weight and credibility to be attached to affidavits for new trial is for the trial judge. (*People* v. *Jefferson* (1956) 47 Cal.2d 438, 446 [303 P.2d 1024].) It is clear in the case before us that the trial judge, as did the trial judge in *People* v. *Jefferson, supra,* passed upon the affidavits for new trial and disbelieved the affidavit in support of the motion. In so doing, the judge could have had in mind Lewis' demeanor and action as a witness at the prior trial. (Although Lewis did not testify as to the charge itself he did testify on *voir dire* in opposition to the police officer on the question of the admissibility of Lewis' confession.) There were contradictions between certain statements in Lewis' affidavit and those made by him to Sergeant Hutchings. Lewis' affidavit stated that he had met Rielly three weeks before the robbery. He told Hutchings it was one week before. There was a difference in the description of Rielly in Lewis' affidavit as compared to that given Hutchings, probably a slight difference as to complexion, but a difference of 2 inches in height is significant. While Lewis claimed that defendant was not his accomplice in the robbery, he at no time denied that it was defendant who was with him at Mrs. Mayes' home when Mrs. Mayes saw the gun and when he obtained the nylon stockings, nor did he deny telling Hutchings that it was defendant who was with him there, either in or outside the house. There was no record of Rielly having escaped from an Oklahoma institution. Although Lewis claimed to have known Rielly for some three weeks and well enough to commit a robbery with

him, he qualifies his statement of the latter's name by saying it was Dave Rielly "as far as I know. . . ." Moreover, Lewis was doubtful if he would be able to recognize Rielly again. The judge was entitled to consider that Lewis, now that he had been convicted, had nothing to lose by coming to the rescue of a pal with whom he "had done something together about four or five years ago. . . ." Lewis had not testified at the trial, so he could make his affidavit in safety as he could not be confronted with his own sworn testimony to the contrary of the statements in his affidavit, and therefore he would have but little fear of a perjury charge.

In *People* v. *Byrne* (1911) 160 Cal. 217 [116 P. 521], the court stated the rule on motions of this kind thusly: "[I]t is the settled rule in this state, based on the soundest reasons of expediency and public policy, that the decision thereon of the trial court, the tribunal best fitted to correctly determine as to the genuineness and effectiveness of the showing, shall be conclusive in the absence of a clear showing of abuse of discretion." (P. 234.) Regarding the affidavits there filed the court also said, ". . . potent as these affidavits may have been, *if believed*, it may not be said by this court that the trial court did not exercise a sound discretion in absolutely discrediting them." (P. 231; emphasis added.) ■ "The rule that a trial judge is not required to accept as true the sworn testimony of a witness applies to affidavits. [Citations.]" (*People* v. *Canada* (1960) 183 Cal.App.2d 637, 642 [7 Cal.Rptr. 39].)

The discretion committed to a trial court on a motion of this kind is referred to in *People* v. *Fluery, supra,* 161 Cal. App.2d 630, 634, as "an enlarged discretionary power" (citing cases).

The facts in the cases upon which defendant relies are in nowise comparable to those in our case. In *People* v. *Williams, supra,* 57 Cal.2d 263, the affidavits upon which the Supreme Court based its reversal of the trial court's order denying new trial on the ground of newly discovered evidence, were of two unbiased witnesses, "persons with nothing to gain; in fact in making the affidavits, they were incriminating a member of their own family in at least acquiescing in a false story. . . ." (P. 271.) Lewis can hardly be considered an unbiased witness. In *People* v. *Shepherd* (1936) 14 Cal.App. 2d 513 [58 P.2d 970], the only testimony at the trial linking the defendant with the persons who committed the crime was that of the victim. On the motion for new trial one Anderson who was not one of the persons charged swore in an affidavit

and on the stand that he and two named persons had committed the crime and that the defendant was not in any way connected with its commission. The victim was then asked if seeing Anderson in any way changed his mind as to his identification of the defendant as being one of his assailants. The victim then stated that it caused a doubt; whereupon the deputy district attorney who tried the case stated that in view of the " '. . . inherent weakness in identification . . .' " (p. 516) and Anderson's testimony, and after consultation with his superiors in the district attorney's office, he would not oppose the motion for new trial.

Concerning *Shepherd,* the court in *People* v. *Monroe* (1958) 162 Cal.App.2d 248 [328 P.2d 483], in sustaining the order of the trial court denying a motion for new trial where one of the defendants after trial admitted he had robbed the store but claimed that the other defendant had nothing to do with the affair, said, *"People* v. *Shepherd,* 14 Cal.App.2d 513 [58 P.2d 970], relied upon by the appellant is readily distinguishable, as there the complaining witness was in doubt as to the identity of the defendant and the State admitted doubt." (P. 255.) Here there is no indication that Mrs. Barner would change her identification.

The third case, *People* v. *Gilbert, supra,* 62 Cal.App.2d 933, is not of much help in this regard. It fails to disclose the newly discovered evidence upon which the appellate court acted.

The order is affirmed.

Sullivan, J., and Conley, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 8, 1962.

---

*Assigned by Chairman of Judicial Council.