[Crim. No. 12348.   Second Dist., Div. Five.   May 12, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CARLOS C. CUEVAS, Defendant and Appellant.

David C. Marcus, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward J. Horowitz, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant was found guilty of a violation of section 11500.5 of the Health and Safety Code (possession of heroin for sale). Unless the search which led to the discovery of the narcotic was legal, the People had no case.

The evidence concerning the legality of the search came from Officer Underhill of the Traffic Enforcement Division of the Los Angeles Police Department. On the day in question, May 10, 1965, at about 3:30 p.m. he was southbound on the Pasadena freeway riding a motorcycle. A 1965 Chevrolet sedan was parked in an emergency parking area, also southbound. There were bushes directly to the west of the car and beyond the bushes there was a six-foot fence. Defendant was observed approaching the front of the car from these bushes. Two people were inside the car, one on the right front passenger side and the other in the right rear. As defendant walked around the vehicle, Underhill noticed a white paper bag in defendant's hand which he tossed into the car through the open window on the driver's side.

Underhill pulled his motorcycle to a stop behind the car and defendant approached him. Underhill asked whether he could assist him.[1] Defendant said he had stopped because

---

[1] His orders compelled him to stop for disabled vehicles on the freeway.

there was a shimmy in his car. The motor was still running. Underhill got off the motorcycle and walked to the front of the car with defendant. As he passed the car he smelled a strong "acid" odor. He did not think anything about the odor at the time. He walked to the right front tire of the car and could see nothing wrong with it. He then walked back to the right side and again smelled the strong odor. The front door on the passenger side of the car was partially open. He looked into the car, was unable to see the white paper bag which Cuevas had tossed into it and asked him where it was. Cuevas said: "What paper bag, I didn't see any paper bag." These facts indicated to Underhill that a narcotics violation had taken place.[2] Underhill again looked into the car. This time he "put [his] head slightly in the window to look at the other two gentlemen . . ." The strong odor persisted. He asked the occupants of the car to get out and to walk to the rear, which they did. He looked into the car and again could not see the white paper bag until he bent over and found it under the right front seat. He dumped the contents onto the floorboard of the car. There were 10 condoms containing a brown substance which did not resemble anything that he had ever seen packaged in that manner. During his training as a policeman he had received a broad knowledge how narcotics were packaged and how they were treated. He had also been informed that heroin is processed with acid and that it was packaged in condoms to keep it fresh. Some of the classes he had attended also "touched on the fact that narcotics peddlers made drops in bushes in [on?] the freeways." About two weeks before the events described, officers at the Highland Park station had told him that narcotics and marijuana were being passed from the freeway through the fence at this particular location. On the other side of the fence there was a park.

After he had emptied the contents of the bag, he walked back to the three occupants of the car and asked them to come up and look at his find. They all denied ever having seen it before. He then called for assistance which arrived in about 10 minutes.

The record is somewhat vague concerning the exact point of time when defendant was formally arrested. The only evi-

---

[2] "THE COURT: When is the first incident that indicated it was something that looked like narcotics there? THE WITNESS: The fact I saw the white paper bag tossed in the car and I didn't see it when I looked in the car."

dence is that the other officer arrived to assist Underhill, they all proceeded to the police station, at which time defendant was already under arrest.

Fred J. McKnight, a police officer to whose qualifications defense counsel stipulated, testified that the retail value of the heroin when diluted to its final form ''for sale on the street'' was $96,000. The wholesale value was about $4,000. Heroin emits a strong acid odor ''depending on the strength or the quantity.'' After defendant's arrest McKnight examined him and determined that he was not addicted. The heroin found in the white bag was not ready for use because ''the body would not tolerate this product as it appears here in court, being 50 percent pure heroin.'' The average heroin content of the product used by addicts was 5 percent. In his opinion a person in possession of a quantity such as that found in the white bag, had it for resale. At the time of the trial the acid odor of the heroin was not strong. He had smelled it when it was brought into Narcotics Headquarters when the odor was much stronger. As heroin gets older the acid smell tends to dissipate. Defense objections to questions directed to the reason for the decrease of the acid were sustained.

After the above evidence was introduced the People offered the heroin in evidence.[3] Defense counsel requested the court not to rule at that time, but to order Officer Underhill to be returned to the stand. The officer was not in the courtroom and the court requested an offer of proof. The offer was as follows: at the trial Underhill had testified that he first saw defendant's car when he was 200 feet north of it. At the preliminary hearing he had said that he saw it when he got onto the freeway at Avenue 52, about one thousand feet north. The offer was ruled immaterial, the question of the admissibility of the heroin was argued, the defense objections were overruled, the defense rested, the case was argued on the merits and defendant was found guilty.

Defendant then changed attorneys. His new counsel filed an elaborately prepared motion for new trial. In essence it claimed that defendant had been denied the effective representation of counsel. (*People* v. *Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].) Supporting documents were as follows:

1. A declaration signed by an apparently well qualified

---

[3]That the substance found in the car was, indeed, heroin, was covered by stipulation.

Ph.D. in pharmacology and pharmaceutical chemistry, who was also an associate professor of pharmacology and toxicology, to this effect: a certain acid is used in the production of heroin. It smells like vinegar. With the passage of time the smell of that acid does not diminish, but increases. He had personally smelled the heroin admitted in evidence and the odor was very faint, similar to an open bottle of old aspirin. Underhill's testimony concerning the intensity of the odor was a scientific impossibility. McKnight's testimony that the odor tends to dissipate with the passage of time was incorrect.

2. A declaration by an attorney for a former codefendant that when the heroin had been introduced at the preliminary hearing he had been unable to smell it and that when the magistrate smelled it she "indicated by gesture that she could detect no appreciable odor."

3. A declaration by a photographer which laid the foundation for certain photographs which were attached to the moving papers and which were designed to show:

(a) That Underhill could not have seen defendant's car when he got onto the freeway at Avenue 52; and

(b) That Underhill's descriptions of the emergency parking area, the bushes and certain other physical characteristics were mistaken.

4. A declaration by defendant in which he complains in general terms of his trial counsel's apparent lack of interest in the case, his persistent refusal to visit the scene of the arrest before the preliminary hearing, his belittling of the danger of Underhill's testimony and his refusal to take pictures of the scene of the arrest. Defendant's declaration also states that the photographs attached to the photographer's declaration are accurate and that the technical information contained in the declaration of the professor of pharmacology was unknown to him at the trial and "could not have been obtained by me with due diligence prior to the time of trial." He had informed his trial counsel that the heroin found in the car gave off no appreciable odor at the time of the arrest, but counsel told him that "obtaining such testimony from an expert would be an impossibility." The motion for a new trial was denied. The court then pronounced sentence.

On appeal defendant makes two contentions:

1. The search and seizure of the heroin was illegal; and

2. He was denied the effective assistance of counsel.

## The Legality of the Search

In determining whether or not Officer Underhill conducted a legal search of the vehicle, we must remember that any factual conflict was impliedly resolved in favor of the People. (*People* v. *Carrillo,* 64 Cal.2d 387, 390-391 [50 Cal.Rptr. 185, 412 P.2d 377].)

Obviously the search of the automobile which resulted in the recovery of the white bag under the seat can only be justified if at the time when the search started Officer Underhill had the right to make an arrest. The fact that the search preceded the arrest is immaterial—the two were substantially contemporaneous. (*People* v. *Sandoval,* 65 Cal.2d 303, 310-311, fn. 4 [54 Cal.Rptr. 123, 419 P.2d 187]; *People* v. *Cockrell,* 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116].)

█ We believe that probable cause to make an arrest without a warrant existed at that time.

The fact that the car had stopped in an emergency parking area was not suspicious in itself. It merely imposed on the officer a duty to offer assistance. To this, however, there were added the following factors:

1. The presence of defendant in the bushes behind the car, carrying a white bag, when the alleged reason for stopping was a shimmy.

2. The officer's information that the very location where the car was parked was being used to pass narcotics from the freeway to the fence. This information was not at all inconsistent with the fact that defendant returned from the fence in possession of the white bag. He may not have met the person he had planned to meet.

3. Defendant's denial of knowing anything about any bag, made in response to a question which Underhill undoubtedly had the right to ask. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658].)

4. The disappearance of the bag from open view.

As far as probable cause to arrest is concerned, the acid odor is somewhat of a red herring, although it would have impeached Underhill's and McKnight's testimony if it could have been shown that they were wrong about the strength of the smell. The officer had already suspected that he was facing a narcotics violation when he had taken his first look into the interior of the car and defendant had denied having thrown a white bag into it. Underhill testified that the significance of the odor did not become apparent to him until after he had taken his second look into the interior when he put his head

slightly into the window. Probable cause to make the arrest existed before then.[4]

Defendant draws our attention to a statement by the trial court which we copy in the footnote.[5] These remarks were made by the court not when it ruled on the subject of probable cause but after defense counsel had made his offer of proof concerning the visibility of defendant's car from the point where Underhill got onto the freeway. The court was merely giving its reasons for why it thought that the offered evidence was immaterial to the issue of probable cause, an issue which was argued after the offer was rejected. We do not think that this offhand remark, made in a different context, vitiates the court's ruling on the admissibility of the evidence.

### Alleged Denial of Effective Assistance of Counsel.

Since this matter was brought to the attention of the trial court by motion for new trial, reversible error, if any, must be found in the denial of that motion. We see no reason why the usual rules pertaining to the role of the trial court in passing on a motion for new trial should be disregarded because the claim to denial of the effective assistance of counsel. ▮ One of the powers of the trial court is to disbelieve allegations in the declarations, even though they are not controverted. (*People* v. *Meyer*, 216 Cal.App.2d 618, 636 [31 Cal.Rptr. 285] ; *People* v. *Canada*, 183 Cal.App.2d 637, 642 [7 Cal.Rptr. 39] ; *People* v. *Bannister*, 153 Cal.App.2d 480, 484 [314 P.2d 577].) Defendant had the strongest possible motive to misrepresent his dealings and conversations with his trial counsel. He faced a minimum term of 15 years in prison. (Health & Saf. Code, § 11500.5.) Nothing he said had to be accepted. If the rule were otherwise, *People* v. *Ibarra*, 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 836, 386 P.2d 487], would indeed become a "boudoir defense," unchallengable by the prosecution, as long as

---

[4]The slight intrusion into the privacy of the interior of the car was therefore part of the then permissible search.

[5]"Let's just put that to one side for a moment. He did say that when he saw the car it was on one side of the road in a pull-off place. Now, that must be a fact. There can hardly be any question about that . . . . pursuant to code or instructions he pulled over to the side. That he testified to. That at that time a bag of something was apparently thrown from the left-hand side or the driver's side of the automobile as he got off and was walking up to the auto. *That as he passed the auto he smelled an aroma of acid that he later stated in his opinion was indicative of heroin or narcotics.* Those basically get into your grounds of probable cause." ((Italics added.)

defendant is, willing to file false declarations concerning his private relations with his attorney.

▆▆▆▆ It cannot be said that without defendant's alleged importuning of his counsel to be better prepared, the matters presented on the motion for new trial should have been presented at the trial. We have looked at the photographs of the area where the car was parked and any discrepancies between Underhill's testimony and the physical facts are hardly worth mentioning. The fact that the approach to the area was not straight but curved is quite collateral and, in any event, would not have impeached the officer's testimony at the trial.

Concerning the declaration by the pharmacologist: granting sincerity on the part of the declarant, we cannot possibly hold that it has been demonstrated that the failure to produce this witness reduced the trial to a farce or a sham. Can we say that his statements are incontrovertible? Is it an unconstitutional denial of the right to be represented by counsel that an attorney does not think of the possibility that the smell of acid increases? Our Supreme Court has said in *People* v. *Reeves,* 64 Cal.2d 766 [51 Cal.Rptr. 691, 415 P.2d 35] : "Defendant has the burden, moreover, of establishing his allegation of inadequate representations 'not as a matter of speculation but as a demonstrable reality.' (*Adams* v. *United States* ex rel. *McCann* (1942) 317 U.S. 269, 281 [87 L.Ed. 268, 275 63 S.Ct. 236, 143 A.L.R. 435] ; accord, *People* v. *Robillard* (1960) *supra,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295].)" (*Ibid.,* p. 774.) We hold that lack of adequate representation was not shown to the trial court "as a demonstrable reality" and that there was no error in denying the motion for new trial.

### Prior Convictions

It was the contention of the People that defendant had suffered two prior narcotics convictions. Documentary evidence was produced that on July 18, 1952, in the United States District Court for the Southern District of Florida, one Carlos C. Cuevas pleaded guilty to the offense of "unlawfully aiding and abetting others in selling narcotics." No further details concerning the nature of the offense are furnished. No argument is presented that this judgment is not properly certified. The second judgment was one of the United States District Court for the Northern District of California, Southern Division and dated November 8, 1956. It shows that, among other things, one Carlos Cuevas was convicted of the "illegal sale and concealment of heroin." This judgment is certified

as correct by R. W. Meyer, allegedly the warden of the Federal Correction Institution at Terminal Island, San Pedro, California. The certificate shows no seal.

The second judgment was not properly authenticated. Both section 969b of the Penal Code and section 1905 of the Code of Civil Procedure require that the documents made admissible by those sections be certified. Section 1923 of the Code of Civil Procedure requires that the certificate "be under the official seal of the certifying officer. . ." (See *People v. Foster*, 3 Cal.App.2d 35, 41-42 [39 P.2d 271].)

The People point out that under section 1453 of the Evidence Code, which will of course be in effect at the time of a retrial, the signature of the purported warden would be presumed to be genuine; therefore, in the absence of contrary evidence, the record which is before us now would be adequate to support the finding that defendant suffered the 1956 conviction. The trouble with that argument is that we cannot assume as a matter of law that there will be no evidence produced on behalf of defendant.

There is no merit to defendant's other contention concerning the 1956 conviction, that the People have not proved, prima facie, that the Carlos Cuevas named in the judgment is Carlos C. Cuevas, the defendant. (*People v. Hettick*, 126 Cal. 425, 428 [58 P. 918]; *People v. Sberno*, 22 Cal.App.2d 392, 398-402 [71 P.2d 274]. Note 11 A.L.R.2d 870, 884.)

Adverting to the 1952 conviction, we note that the copy of the judgment merely shows that defendant was convicted of aiding and abetting others "in selling narcotics." There is no specification of the type of narcotics involved. Section 11500.5 of the Health and Safety Code requires that the federal offense "if committed in this State would have been punishable as a felony offense described in this division. . . ." In 1952, as now, the term "narcotics" as used in division 10 of the Health and Safety Code was defined in section 11001 of that code. At that time the federal definition of "narcotic drug" was contained in 21 U.S.C. 171. Comparison of the two definitions reveals that there is at least one substance which is a narcotic under the federal law—coca leaves—which was not listed in section 11001 of the Health and Safety Code at that time. (Stats. 1949, ch. 1475, p. 2566.) Section 11002 of the Health and Safety Code widens the definitions of section 11001 by including, within the term "narcotics," any "salts, derivatives, or compounds" of a narcotic as defined in section 11001. Coca leaves were not

added to the statutory definition until 1959. (Stats. 1959, ch. 736, p. 2724.) It is evident from the statute as again recast in 1961 (Health & Saf. Code. § 11001, subd. (c)) that coca leaves are not a derivative of any narcotic listed in 1952, but are the raw material from which other narcotics are derived.[6]

That part of the judgment finding the two prior convictions of August 8, 1952[7] and December 2, 1956, and imposing sentence is reversed and the cause is remanded to the trial court with directions to resentence defendant after the conclusion of a limited new trial on the issue of the challenged prior convictions. (*People* v. *Morton,* 41 Cal.2d 536, 545 [261 P.2d 523]; *People* v. *Stanphill,* 166 Cal.App.2d 467, 471 [333 P.2d 270].) Otherwise, the judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1967.

---

[6]We have researched the possibility that coca leaves were declared to be a narcotic by administrative action pursuant to section 11002.1; it appears that they were not.

[7]The judgment contains an obvious clerical error and refers to a conviction of August 8, 1962. Even when read as 1952, it should be pointed out that the dates of the convictions recited in the judgment, do not conform with the dates on the documentary material offered.