[Crim. No. 13290. Second Dist., Div. Five. Mar. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES W. WHEELER, Defendant and Appellant.

---

Jonathan E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and Suzanne Graber, Deputy Attorney General for Plaintiff and Respondent.

KAUS, P. J.—Defendant appeals from a judgment of conviction for assault with a deadly weapon. (Pen. Code, § 245, subd. (a).)[1]

Two prior felony convictions were charged in the information, one a 1960 Texas felony, the other a 1963 Mississippi conviction. The Texas felony was found to be true. There was no finding with respect to the Mississippi conviction.

The matter was submitted to the trial court on the transcript of the preliminary hearing at which hearing defendant had been represented by the public defender. The facts disclosed at that hearing, briefly summarized, are as follows:

On February 27, 1966, defendant and Mrs. Oppegard, with whom he shared an upstairs apartment at the Brookmore Hotel in Pasadena, had some kind of argument. She called the police and met several officers downstairs. It is not very clear whether she wanted defendant arrested or merely desired the officers to help her get her clothing out of the apartment.

One officer called defendant on the telephone and asked him whether he had a shotgun. Defendant dared him to ''come up and find out,'' threatening to kill anyone that came near the room.

The officers went upstairs. Defendant was asked to open the door to the apartment. His response was another threat. The

---

[1]The alleged victim of the assault was a uniformed police officer engaged in the performance of his duties and it seems highly probable that if defendant was guilty at all, he was guilty of the more serious violation of section 245, subdivision (b) of the Penal Code. The trial court, however, when finding defendant guilty did not say anything about the identity or occupation of the victim. The original judgment simply recited that defendant had been found guilty of the ''crime of assault with a deadly weapon (Sec. 245 PC) . . .'' The clerk's clerical omission was corrected *nunc pro tunc* while this appeal was pending. Our record was appropriately augmented.

door was then kicked open by an officer. Defendant stood in the room holding a shotgun which was pointed toward the door. Its hammer was cocked. He made another threat and came closer to the door. Finally, Officer Shell, who was also armed with a shotgun, shot at defendant, wounding him and badly shattering one area of defendant's gun forward of the trigger. Only one shot was heard. Immediately after Shell's shot the hammer on defendant's shotgun was still cocked. Shell received a slight buckshot wound in or near his left eye. It was never determined whether it was caused by the shot from his own gun. The only evidence that defendant fired his gun is testimony by one officer that the gun contained one spent shell which smelled as if it had been recently fired.

Defendant was bound over on a charge of assault with intent to commit murder. (Pen. Code, § 217.)[2]

In the superior court defendant was represented by private counsel. On June 20, 1966, defendant, in person, waived his right to a jury trial. Counsel joined in the waiver. The prosecutor and defense counsel then entered a stipulation to submit the matter on the transcript of the preliminary hearing, subject to the right of both sides to call additional witnesses. Defendant did not personally participate in the stipulation or affirmatively indicate his assent thereto.[3]

---

[2] Certain points should be noted with respect to the recital of facts: 1. There is no evidence that any of the officers at any time informed defendant that it was their purpose to arrest him. On appeal defendant takes the position that the police could not legally arrest him. The People counter by pointing to section 834a of the Penal Code which declares that a person who knows, or should know, that he is being arrested must not use force to resist. The statute has been interpreted to apply to lawful and unlawful attempts to arrest. (*In re Bacon*, 240 Cal.App.2d 34, 52-53 [49 Cal.Rptr. 322].) In *People* v. *Coffey*, 67 Cal.2d 204 [60 Cal. Rptr. 457, 430 P.2d 15] (see text accompanying fn. 19), however, it was held that section 834a only applies where the police, in fact, attempt an arrest, not just a detention for questioning. In view of the holding in *Coffey* it seems particularly vital that peace officers comply with sections 841 and 844 of the Penal Code whenever possible; 2. although, technically, completion of the crime of which defendant was convicted did not require that he actually fire his gun (*People* v. *McCoy*, 25 Cal.2d 177, 189-194 [153 P.2d 315]), the evidence that he did fire is rather slight. Although various photographs were taken, the only one which shows an area where buckshot hit was one identified by Officer Shell as having been taken in the direction in which Shell himself fired. Shell's injury does not prove very much since some of the shot from his gun must have ricocheted off defendant's gun.

[3] In *People* v. *Foster*, 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976] it was again held that "... any objection to the use of the preliminary hearing transcript at the trial was waived when defense counsel, in defendant's presence and without objection by him, joined in the stipulation regarding the use of that transcript." Nothing in this opinion should be construed to express any doubt of that rule.

It is noted that in view of the reserved right to call additional witnesses, defendant had—as far as the record shows—no reason to anticipate that he would not get an opportunity to testify in his own behalf.

The case came on for trial on June 30, 1966. The following is a complete copy of the transcript of the proceedings: "THE COURT: People versus Wheeler. Let the record show that the Court has read the entire transcript of the preliminary hearing in this case and has examined the exhibits. MR. LEWIS: The People rest. THE CLERK: Was there a submission here? THE COURT: Yes. [DEFENSE COUNSEL]: The defense rests, your Honor. THE COURT: Do you want to argue it? MR. LEWIS: The People will submit the matter. [DEFENSE COUNSEL]: The defense submits the matter, your Honor. THE COURT: I find the defendant guilty of assault with a deadly weapon, a lesser and necessarily included offense than that charged in the Information, assault with a deadly weapon with intent to commit murder. THE DEFENDANT: What! [DEFENSE COUNSEL]: Your Honor, the defendant waives time for sentence and requests leave of Court to file a written application for probation. THE COURT: The matter wi'l be referred to the Probation Department. It will be set for hearing on probation and sentence on July 21st at 9:30. The defendant is remanded to the custody of the Sheriff pending further hearing. THE DEFENDANT: You mean I have been tried? THE COURT: Certainly. You just got tried and were found guilty. [DEFENSE COUNSEL]: A.D.W. THE DEFENDANT: Wait a minute. I haven't said a word.[4] THE COURT: Take him out of here. THE DEFENDANT: What is this? THE COURT: Wait a minute. Come here. This case was submitted on the transcript by your counsel. At the last hearing it was submitted on the transcript of the testimony taken at the preliminary hearing and I have read the transcript, and on the basis of the testimony there I found you guilty, so you have had a trial. What are

---

[4] In connection with the investigation of the probation officer, defendant later addressed a letter to the trial judge which, among other things, points to possible insanity or diminished capacity, and in which he claims that he never intended to shoot anyone and merely wanted to bluff the officers into leaving him alone. He writes: "I am sorry I argued with you in court but this is the story I wanted to tell and I couldn't figure out how you could find me guilty without even knowing my side of the story." If true, defendant's lack of intent to harm the officers would have been a defense to the crime of which he was convicted. (*People* v. *Coffey*, 67 Cal.2d 204, 221-222 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Wilson*, 66 Cal.2d 749, 756-759 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Carmen*, 36 Cal.2d 768, 774-775 [228 P.2d 281].)

you complaining about? THE DEFENDANT: *I haven't said a word.* THE COURT: You don't have to say a word. Your counsel didn't put you on. You don't have to say anything. THE DEFENDANT: *What did I pay him for?* THE COURT: I don't know.[5] Take him out. [DEFENSE COUNSEL]: Thank you." (Italics added.)

 We think this case is indistinguishable from *Brookhart* v. *Janis*, 384 U.S. 1 [16 L.Ed.2d 314, 86 S.Ct. 1245.] In *Brookhart* the Supreme Court reversed when defense counsel agreed to proceed under a procedure known as a "prima facie case." This meant that he would be unable to cross-examine witnesses. The trial court announced that by thus proceeding the defendant, though not technically or legally, "in effect admits his guilt and wants the state to prove it." Defendant had then said: *"I would like to point out in no way am I pleading* guilty *to this charge."* Nevertheless his counsel said: "Prima facie, Your Honor, is all we are interested in." Reversing,

_____

[5]Neither do we. The record demonstrates that counsel's hand did nothing but guide defendant straight to prison. If we did not reverse for the reason stated in the opinion, the facts of this case would probably force us to conclude that defense counsel's performance reduced the trial to a "farce and a sham." (*People* v. *Ibarra*, 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].) The probation report disclosed several possible defenses to the charge which might have been established by defendant's testimony and psychiatric evidence. Without any real faith in the matter, we assume that they were investigated and found not worth pursuing. Counsel's failure to make any argument with respect to the various legal problems apparent on the face of the preliminary transcript is harder to explain. Finally, his conduct at the time of sentence is beyond belief. The prior Texas felony was found to be true on the basis of the following record: "THE COURT: Is there any question about the first prior? [DEFENSE COUNSEL]: The one in Texas, that is a good prior, isn't it? THE DEFENDANT: Yes. [DEFENSE COUNSEL]: No objection. . . . THE COURT: . . . The Court finds the first prior charged, the Texas prior, to be true. . . ." To what did defense counsel have "No objection"? Nothing had been offered. Can an attorney rely on the client's assurance that a prior conviction "is a good prior"? A lay client is probably the last to know whether his earlier conviction can be legally proved. The prosecution may run into problems of authentication (*People* v. *Cuevas*, 250 Cal.App.2d 901, 908-910 [59 Cal.Rptr. 6]) or voidness for constitutional reasons (*People* v. *Coffey*, 67 Cal.2d 204, 214-215 [60 Cal.Rptr. 457, 430 P.2d 15]; *In re Woods*, 64 Cal.2d 3 [48 Cal. Rptr. 689, 409 P.2d 913]). Even when *Betts* v. *Brady*, 316 U.S. 455 [86 L.Ed. 1595, 62 S.Ct. 1252] was thought to be good law, the United States Supreme Court held in *Chewning* v. *Cunningham*, 368 U.S. 443 [7 L.Ed. 2d 442, 82 S.Ct. 498] that in a state recidivist proceeding "the labyrinth of the law is, or may be, too intricate for the layman to master." Here counsel treated the courtroom proceedings as an occasion to interview his client on a point on which the client was incompetent to assist him. He then stipulated away a wealth of possible objections of which he was quite uninformed. That is playing Russian roulette with just one empty chamber. (Cf. *Fay* v. *Noia*, 372 U.S. 391, 440 [9 L.Ed.2d 837, 870, 83 S.Ct. 822].)

the Supreme Court said: "Our question therefore narrows down to whether counsel has power to enter a plea which is inconsistent with his client's expressed desire and thereby waive his client's constitutional right to plead not guilty and have a trial in which he can confront and cross-examine the witnesses against him. We hold that the constitutional rights of a defendant cannot be waived by his counsel under such circumstances. It is true, as stated in *Henry* v. *Mississippi*, 379 U.S. 443, 451 [13 L.Ed.2d 408, 415, 85 S.Ct. 564], that counsel may, under some conditions, where the circumstances are not 'exceptional, preclude the accused from asserting constitutional claims . . .' Nothing in *Henry*, however, can possibly support a contention that counsel for defendant can override his client's desire expressed in open court to plead not guilty . . . and enter in the name of his client another plea—whatever the label—which would shut off the defendant's constitutional right to confront and cross-examine the witnesses against him which he would have an opportunity to do under a plea of not guilty. . . ." (*Ibid.*, pp. 7-8 [16 L.Ed.2d p. 319].)

If, in this quote, we substitute the words "offer testimony"[6] for "confront and cross-examine the witnesses against him, "*Brookhart* becomes this case. We cannot, in conscience, distinguish *Brookhart* on the basis that there the defendant spoke up a little sooner. The record shows that he had more time.

We recognize that defendant did not express his desire to testify until after the court had found him guilty. This opinion should not be construed to encourage outbursts by defendants after they have gambled and lost. Nor do we intimate that an attorney must comply with a client's desire to testify when his professional judgment tells him that he should not. (See dictum in *People* v. *Gutowsky*, 219 Cal.App.2d 223, 227 [33 Cal.Rptr. 79]; cf. *In re Atchley*, 48 Cal.2d 408, 418-419 [310 P.2d 15].)

The trouble with the record in this case is that when it must have been apparent to the trial court that there may have been a serious breakdown of communications between defendant and his attorney and that defendant may have been

---

[6]"A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, *to offer testimony*, and to be represented by counsel." (*In re Oliver*, 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499].) (Emphasis added.)

totally unaware that the case would be submitted without his own testimony, an inquiry should have been instituted. If, after such an inquiry, the trial court had found either expressly or impliedly that defendant's protests were nothing but an act or that counsel made a tactical decision not to have his client testify, we would be bound by the consequences of such a finding. Unfortunately nothing of the sort took place and we cannot assume that the ruling would necessarily have been adverse to defendant. On paper, at least, his complaints have the ring of truth and his counsel's conduct in other respects makes us doubt whether he gave this case any thought except how to get it over with quickly.

We have given consideration to remanding the case to the superior court for the sole purpose of instituting a hearing with these limited determinations in mind; however, in view of the entire record, particularly the ineffectiveness of counsel in other respects, we think that the proper course for us is to reverse the judgment in its entirety.

The judgment is reversed.

Hufstedler, J., and Stephens, J., concurred.

On April 23, 1968, the opinion was modified to read as printed above.