[Crim. No. 693. Fifth Dist. Oct. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND E. DOEBKE et al., Defendants and Appellants.

## COUNSEL

John A. Cape, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Jack R. Winkler, Edsel W. Haws, Michael H. Fabian and A. Wells Peterson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

GARGANO, J.—On February 3, 1968, John Fowler, a 43-year-old unpaid undercover narcotic agent, and James Ronald Brooks, an 18-year-old paid informant with a juvenile record, were engaged by the police to do some undercover work in connection with the narcotic activities which were prevalent in the communities of Oroville and Chico. They were given some money and a car, and instructed to go to the Academy Pool Hall in Chico to purchase marijuana from anyone willing to sell it.

Fowler and Brooks arrived at the pool hall at about 12 noon and began to circulate among the people present. While there, Brooks met one Manuel "Mouse" Gonzales, a friend of Darrell Poore, and told Gonzales that he was looking for marijuana. Afterward, Poore approached Brooks and asked him if he wanted to "score." Brooks replied that he wanted a kilo of marijuana to supply the trade among the construction workers in the Oroville area. He also introduced Fowler as his boss. After some discussion, Poore agreed to sell Fowler a kilo of marijuana for $100.

Later that afternoon Fowler, Brooks and Gonzales met Poore in a parking lot in Chico, and Fowler made arrangements for Poore to deliver the marijuana at a rendezvous across the tracks near the college farm. He also paid Poore $100 in advance. Then, Poore left the parking lot but returned a few minutes later saying he could not make delivery until midnight. Fowler asked for his money back, but Poore said he did not have the money with him. He told Fowler he might be able to get it back at a house located at First and Magnolia Streets.

The group arrived at the house at about 4:30 p.m.; Poore went inside and eventually came out with Raymond E. Doebke. Fowler again stated he wanted his $100 back, but instead of giving him the money, Poore and Doebke assured Fowler that they would make delivery at about midnight. Fowler then asked them if they had any marijuana to hold him over for the night. In reply, Doebke went into the house and returned with two plastic bags and showed them to Fowler; he took the bags back into the house when Fowler, Brooks and Gonzales left for a few minutes. However, in about 15 minutes, Brooks returned to the house and picked up the plastic bags. As Brooks re-entered the car in which his companions were waiting, Gonzales opened the bags and removed some of the material. Then he gave the containers to Fowler, who delivered them to Sergeant Jimenez of the Butte County Sheriff's Department. A chemical analysis of the contents disclosed the presence of marijuana.

The following day at about 6 a.m. Poore met Fowler and Brooks at a restaurant in Chico. Poore brought the undercover agents to a house on

Cypress Street; then he went to the rear of the house and came back with a large plastic bag. The bag contained approximately a half kilo of marijuana in loose form.

Subsequently, Poore and Deobke were arrested and tried and convicted of selling marijuana in violation of Health and Safety Code section 11531. They both appeal from the judgments entered on the jury's verdicts. However, their numerous joint and separate contentions for reversal mainly are frivolous or based on facts which are not part of the official record. We shall therefore discuss only those contentions which appear to have substance.

■ Appellants contend that the trial judge erred when he allowed the cross-examination of appellant Poore to extend to matters beyond the scope of his direct examination. They argue that albeit Poore took the stand, he did not deny that he sold marijuana to undercover agent Fowler but merely related the essence of the conversations that took place at the Academy Pool Hall to prove that he was cajoled and pressured into selling the marijuana to establish his defense of entrapment. Accordingly, they assert that the judge should not have permitted the prosecutor to question Poore about the sale which took place on the following day.

■ It is of course the rule that if a defendant takes the stand and does not deny the crime charged, he may be cross-examined only as to matters about which he was examined in chief (*People* v. *Robinson,* 61 Cal.2d 373 [38 Cal.Rptr. 890, 392 P.2d 970]). In fact, the California Supreme Court has characterized the rule as "an indispensable ally of the federal and state constitutional rights guaranteeing that a person shall not 'be compelled in any criminal case to be a witness against himself.' " (*People* v. *Schader,* 71 Cal.2d 761, 769 [80 Cal.Rptr. 1, 457 P.2d 841].) However, the court also made it clear that this does not mean that "when a defendant voluntarily testifies in his own defense the People may not fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them." (*People* v. *Schader, supra,* p. 770.) ■ Thus, while a defendant who voluntarily takes the stand to testify is still protected by the Fifth Amendment privilege against self-incrimination, he must nevertheless answer all inquiries asked by the cross-examiner to refute or explain any reasonable or logical inference which may have arisen from his direct testimony.

In this case, Poore testified that when he was approached by Manuel Gonzales about selling marijuana, he said, "No." He also told the jury, "I didn't have any to sell and I don't possess marijuana." Manifestly, by telling the jury that he did not have any marijuana to sell and did not possess it, Poore impliedly denied he sold marijuana to Fowler and subjected himself to extensive cross-examination in this respect. Moreover, Poore testified that when Fowler asked him to sell some marijuana he replied, "No, I don't deal with marijuana or anything like that." Thus, the prosecutor was entitled to refute all reasonable inferences that arose from this hearsay statement. Finally (which appellants readily admit), Poore tried to convince the jury that he was cajoled and persuaded by Fowler and Brooks into making the sale and that the idea to sell the illegal drug was implanted in his mind by the undercover agents. The prosecutor was therefore entitled to show, through cross-examination, that Poore accepted $100 in advance (a fact which he denied) and delivered half of a kilo of marijuana to the undercover agents on the following day, to prove that the accused customarily dealt with marijuana and voluntarily sold it to Fowler.

Appellant Doebke relies on *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], to contend that he did not receive effective representation from his trial counsel. He complains because his trial counsel did not object and request an appropriate admonition on each occasion that hearsay testimony admissible only against his codefendant Poore was offered into evidence.[1] He also complains because his trial counsel did not move for a severance of the trial on the ground that Poore's defense of entrapment was prejudicially inconsistent with his own defense.

While it is true that Doebke's counsel should have objected to all hearsay evidence admissible only against Poore, since such evidence is relevant and competent in the absence of a specific objection (*People* v. *Rodriquez,* 274 Cal.App.2d 770, 775 [79 Cal.Rptr. 240]), and though he probably should have moved for a severance of the trial, his omissions were tactical errors which did not reduce the trial to a farce or sham. In short, a defendant making a claim that he was denied effective representation of counsel bears the burden of establishing such alleged ineffective

---

[1]On the two separate occasions that appellants' trial counsel objected to hearsay testimony admissible only against appellant Poore, the court admonished the jury that the evidence could be considered only against Poore. However, on several other occasions when such testimony was offered, counsel failed to object and hence no admonition was given.

representation as a demonstrable reality, not as a matter of mere speculation (*People* v. *Reeves,* 64 Cal.2d 766 [51 Cal.Rptr. 691, 415 P.2d 35].) ■   As the Supreme Court succinctly stated in *People* v. *Ibarra, supra,* 60 Cal.2d 460, 464: "To justify relief on this ground, 'an extreme case must be disclosed.' (Citations.) It must appear that counsel's lack of diligence or competence reduced the trial to a farce or a sham.' "

■   Appellant appends a series of newspaper articles to his brief as further evidence that he was not effectively represented by counsel. He argues that these articles demonstrate that he was arrested in a massive narcotic "roundup" which received great notoriety in Butte County, and that his trial counsel should have made a motion for a change of venue. However, the articles are not part of the official record and cannot be considered in this appeal (*People* v. *Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Dabney,* 250 Cal.App.2d 933 [59 Cal.Rptr. 243]). Moreover, we have not been furnished with a transcript of the *voir dire* examination of prospective jurors. Thus, we cannot tell whether counsel's failure to move for a change of venue was inexcusable, as Doebke suggests.

For additional examples of inadequate representation, appellant alleges that his counsel was drunk the only time that he visited appellant in jail, and that he did not challenge the juror who was related to a 16-year-old girl arrested in the same narcotic raid in which appellant and his codefendant Poore were arrested.[2] But, once again, appellant goes outside of the official record to support these allegations. ■   As we have already indicated, matters which are not part of the official record cannot be considered on appeal (*People* v. *Merriam, supra*).

■   Appellant Doebke contends that the trial judge abused his discretion and deprived appellant of due process of law when he denied Doebke a two weeks' continuance to allow him to substitute attorneys. The facts in this respect are these: On March 8, 1968, four days after his arraignment, Doebke appeared before the trial court and specifically requested the judge to appoint Mr. Galloway, a practicing attorney, to represent him; his request was granted. On April 19, 1968, the Friday immediately preceding the Monday on which the trial was to commence, Mr. Galloway made a motion for a substitution of attorneys and for a one-

---

[2]Doebke and Poore also assert that they did not receive a fair trial because the jury was "inherently prejudiced." However, this is a bold attempt to impeach the jury's verdict, and there is nothing in the record to show that the juror lied during the *voir dire* examination, concealed material facts or tried to unduly influence other members of the jury (see *People* v. *Hutchinson,* 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132]).

week continuance. He informed the court that Doebke wished him to withdraw in favor of Mr. Viets, who had been retained by Doebke's parents. However, Mr. Viets informed the court that he would require a two weeks' continuance because he had a trial in the federal court during the following week and needed an additional week for preparation. The court denied the motion primarily on the ground that a two weeks' continuance would cause a massive disruption of the trial calendar for months to come.

It is of course firmly settled "that due process of law, as it is expressed through the right-to-counsel provisions of the state and federal Constitutions, comprehends a right to appear and defend with retained counsel of one's own choice." (*People* v. *Byoune,* 65 Cal.2d. 345, 346 [54 Cal.Rptr. 749, 420 P.2d 221]; *People* v. *Crovedi,* 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868].) However, a defendant who desires to retain counsel of his own choice is required to act with some degree of diligence, and he may not demand a continuance if he is unjustifiably dilatory or if he arbitrarily desires to substitute counsel at the time of trial (*People* v. *Lee,* 249 Cal.App.2d 234 [57 Cal.Rptr. 281]; *People* v. *Farley,* 267 Cal.App.2d 214 [72 Cal.Rptr. 855]). In other words, the right of a defendant to appear and defend with retained counsel of his own choice is not absolute; "it must be carefully weighed against other values of substantial importance, such as that seeking to ensure orderly and expeditious judicial administration, with a view toward an accommodation reasonable under the facts of the particular case." (*People* v. *Byoune, supra.*) It is within the discretion of the trial judge to determine whether a defendant shall be granted a continuance to obtain counsel of his own choosing (*People* v. *Smyers,* 261 Cal.App.2d 690 [68 Cal.Rptr. 194]). And, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (*Ungar* v. *Sarafite,* 376 U.S. 575, 589 [11 L.Ed.2d 921, 930-931, 84 S.Ct. 841].)

When all of the circumstances of the instant case are considered, it is reasonably apparent that the trial judge's denial of appellant's request for a two weeks' continuance was not so arbitrary as to violate due process. Doebke had specifically requested the court to appoint attorney Galloway, and according to the court's remarks, the request was granted in an unprecedented effort to accommodate him. But, significantly, no compelling reason was advanced for the substitution. Mr. Galloway merely informed the court that his client was dissatisfied mainly because he

had delayed in subpoenaing a number of witnesses, and then explained that the delay was caused by Doebke's failure to supply him with the names of the witnesses. The motion for the substitution of attorneys and the continuance was made only one court day before the date set for the trial, after a jury panel had been summoned to appear and after the prosecution witnesses had been subpoenaed. The trial judge, with justification, opined that appellant and his parents had been dilatory; appellant had been out on bail for sometime, and apparently neither he nor his parents made any effort to retain other counsel until shortly before the date of the trial. Finally, the trial judge, in a lengthy and meticulous review of the trial calendar, ably demonstrated that a two weeks' continuance would not only have seriously disrupted the already congested civil calendar and jeopardized several cases approaching the statutory deadline for trial, but it also would have disrupted the criminal trial calendar as well.

The judgment is affirmed.

Stone, P. J., and David, J. pro tem.,* concurred.

A petition for rehearing was denied November 19, 1969, and the following opinion was then rendered:

**THE COURT.**—In appellants' petition for rehearing, they contend that we rejected their argument that they were not effectively represented by their trial counsel because he did not move for a change of venue and that we then stated that we had not been furnished with a transcript of the *voir dire* examination of the jurors and could not tell whether the omission was inexcusable. Appellants allege that two motions to augment the record to include such a transcript were made in the court where the appeal originated (Court of Appeal, Third Appellate District), and that the motions were denied. Appellants, therefore assert that they were denied due process of law.

■ Admittedly, two separate motions were made to augment the record to include a transcript of the *voir dire* examination of prospective jurors; these motions were denied. However, be this as it may, we did not, nor do we now, have a transcript of the *voir dire* examination of jurors, and we did not, nor do we now, have any way of telling whether it was extremely difficult, if not impossible, to select 12 unbiased jurors in Butte County, as appellants imply. Moreover, since appellants' two motions were summarily denied by the Court of Appeal (Third Appellate District), and since they did not seek relief from the California Supreme Court, we

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

must assume that appellants did not, and could not, make the necessary showing to warrant an augmentation of the record.

It is apparent that there is nothing in the *voir dire* examination of the prospective jurors to support appellants' position that their trial counsel should have moved for a change of venue; we are confident that if there had been justification their motions to augment would have been granted.

Appellants' petition for a hearing by the Supreme Court was denied December 23, 1969. Peters, J., was of the opinion that the petition should be granted.