[Crim. No. 15022. First Dist., Div. One. Nov. 22, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
WADE PERKINS HILL, Defendant and Appellant.

**COUNSEL**

Jackson S. Wallace, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and Jeffrey A. Joseph, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant was charged with petty theft with a prior felony commission in violation of section 667 of the Penal Code and prior convictions of first degree robbery in violation of section 211 of the Penal Code, and of maintaining a place where narcotics were used in violation of former section 11557 (see present § 11366) of the Health and Safety Code. He admitted the prior convictions, and at his trial the jury was

instructed in the language of CALJIC No. 14.41.[1] and returned a verdict finding the defendant "*Guilty* of a felony, to wit: a violation of Penal Code Section 667 (Petty Theft)." The defendant was ordered imprisoned in the county jail for a period of one year and placed on summary probation for a period of three years. This appeal ensued.

Defendant's principal contentions center on the manner in which his admission of the charged prior. conviction was obtained and the subsequent use of those convictions to impeach him when he took the stand in his own defense. He also urges that he failed to receive the effective assistance of counsel and that the trial court erred in denying him an opportunity to substitute new counsel. Finally, he contends that the court erred in denying him a continuance to secure a witness. These contentions are examined and found to be without merit. The judgment, order admitting the defendant to probation,[2] must be affirmed.

On January 11, 1975, defendant was seen entering the Sears store in the afternoon. He went to the hardware department and picked up a sander and put it between his body and a brown bag he was carrying. With the sander in his hand, defendant then walked past a row of cash registers and exited by the same door through which he had entered. As he was approaching the car where two of his companions sat he was apprehended by the security manager of the Sears store. He had left the

---

[1] CALJIC No. 14.41 is entitled "Petty Theft With Prior Conviction of Petty Theft or a Felony—Prior Admitted" and reads: "Every person who steals, takes, carries, leads or drives away the personal property of another with the specific intent to permanently deprive the owner of his property is guilty of theft. [¶] If you find the defendant guilty of theft, it is petty theft as a matter of law."

[2] The minutes in the clerk's transcript contain in the printed recitals the phrase, "The matter is presented, submitted and considered by the Court, and the Court makes its Order Denying probation."

The order concludes, ". . . it is now Ordered, Adjudged and Decreed, that the said *defendant* for the Crime *of a violation of Penal Code Section 667* be imprisoned in the County Jail of the County of Santa Clara for a period of *one (1) year and he is placed upon summary probation for a period of three (3) years.*"

In the absence of a transcript of the oral proceedings at sentencing it may be assumed that the latter language reflects the court's intent to grant probation and to suspend imposition of sentence. (See *Oster* v. *Municipal Court* (1955) 45 Cal.2d 134, 139-140 [287 P.2d 755]; and *People* v. *Atwood* (1963) 221 Cal.App.2d 216, 221 [34 Cal.Rptr. 361].) No opinion is expressed as to whether the offense, punishable by imprisonment in the county jail not exceeding one year or in the state prison not exceeding five years (Pen. Code, § 667), should be treated as a misdemeanor or a felony. It is noted that the court apparently acted under the provision of section 1203, subdivision (b), of the Penal Code which provides for summary probation for misdemeanors.

store without paying for the sander. When he was searched, he produced about $38; the sander cost $44.99.

A security officer and a security manager of the Sears store testified that when defendant was arrested he said he had a receipt for the sander and wanted to make an exchange. Later he told the security officers that he had taken the sander because he needed a fix.

Defendant's companion who had driven him to the store testified that defendant had indicated he wanted to buy a gift for his father.

Defendant testified that he had taken the sander out of the building but that he merely wanted to borrow some money from his companion to pay for it. He said he had wanted to buy a gift for the father of his girl friend. He denied telling the security officers he needed money for a fix.

I

At the outset of the trial, in proceedings in chambers, the defendant's counsel stated that his client wished to admit two alleged prior convictions which he had formerly denied. The court suggested that counsel voir dire his client, and such examination was commenced. After counsel had brought out that the defendant was waiving his right to a jury trial, the court indicated that the examination should be more extensive and the prosecutor took over. The defendant then again waived his right to a jury trial with respect to the prior conviction, acknowledged that he was giving up his right against self-incrimination, and his right to cross-examine witnesses who might be offered to prove the alleged prior conviction. He acknowledged that he understood the admitted prior would enhance his state prison sentence if he were found guilty and sentenced to prison. He stated that he had discussed the matter with his attorney, that he understood what was going on, that he was not under the influence of any drugs or narcotics, and that he had no further questions before admitting his prior convictions. The court thereupon received his acknowledgement that the allegations concerning the prior convictions were true. Thereupon, it was stipulated that the reference to the prior conviction in the statement of the substantive offense would be deleted in reading it to the jury, and that there would be no reference to the prior conviction as alleged in the complaint. (See *People* v. *Fairchild* (1967) 254 Cal.App.2d 831, 837-838 [62 Cal.Rptr. 535] [cert. den. (1968) 391 U.S. 955 (20 L.Ed.2d 870, 88 S.Ct. 1861)]; and *People* v. *Hudgins* (1943) 59 Cal.App.2d 175, 178-179 and 183-184 [138 P.2d 311].)

## A

*In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516], established that "henceforth an accused must be advised of (1) specific constitutional protections waived by an admission of the truth of an allegation of prior felony convictions, and (2) those penalties and other sanctions imposed as a consequence of a finding of the truth of the allegation." (10 Cal.3d at p. 860, and see pp. 861-865.) From the record it appears that the defendant was so advised. He, however, would add a new admonition to those required by *Yurko*. ■ He contends that the defendant's admission of the prior felony convictions was obtained without a knowledgeable and effective waiver of rights by him, because he was not told that the prior convictions could be used to impeach him if he took the stand as a witness.

In support of this position he relies upon *In re Birch* (1973) 10 Cal.3d 314 [110 Cal.Rptr. 212, 515 P.2d 12], and *People* v. *Shells* (1971) 4 Cal.3d 626 [94 Cal.Rptr. 275, 483 P.2d 1227]. In the former case defendant's plea of guilty was set aside because, when he was without counsel, he was not advised of the sex offender registration requirement flowing directly from a conviction under section 647, subdivision (a), which he was accused of violating. (See 10 Cal.3d at pp. 316 and 321-322.) In the latter case it appeared, from proceedings in connection with defendant's motion for a new trial, that an admitted alleged prior felony conviction was in fact not a felony, and that defendant's counsel through failure to investigate had not only permitted the defendant to admit the false allegation, but also dissuaded him from testifying because of fear of impeachment by use of that felony. (4 Cal.3d at pp. 629-630.) The court concluded that trial counsel's failure to ascertain the truth concerning the alleged prior felony conviction operated to deny defendant the effective assistance of counsel guaranteed by the Constitution (*id.,* p. 630).

*People* v. *Shells, supra,* does not throw any light on the problems in this case. Here the defendant did testify. His complaint is not that the alleged felony convictions were not true, but, apparently, that he would not have admitted them if he knew that they could be used to impeach him if he chose, as he did, to testify. That argument confuses cause and effect. If he had refrained from admitting the prior convictions the jury would have been advised that the substantive change involved a prior conviction, and that the defendant was charged with the two prior convictions set forth in the information. Also, the prosecution properly

would have offered evidence to prove each of them as part of its case in chief regardless of whether defendant took the stand or not. Moreover, it is clear that in any event, disregarding the admission, once the defendant took the stand the prosecution could offer evidence of the prior convictions to impeach him. In *People* v. *Peete* (1946) 28 Cal.2d 306 [169 P.2d 924] [cert. den. (1946) 329 U.S. 790 (91 L.Ed. 677, 67 S.Ct. 356) and (1947) 331 U.S. 783 (91 L.Ed. 1815, 67 S.Ct. 1185)], the court construed the restraints in the Penal Code as follows: "Defendant contends that the court erred in admitting evidence of the Denton murder on the ground that section 1025 of the Penal Code provides that when a defendant who pleads not guilty has been charged with a previous conviction and admits the charge, 'the charge of the previous conviction must not be read to the jury, nor alluded to on the trial.' A previous conviction is charged, however, solely for the information of the court and the prison authorities in determining the punishment to be imposed in case of conviction. [Citations.] This section, as well as section 1093 of the Penal Code, prevents the circumvention, by reading or alluding to the admitted charge in the presence of the jury, of the rules against the admission of evidence of a previous conviction when such evidence is not relevant or admissible to impeach. [Citation.] It was not designed to exclude relevant evidence nor to prevent the impeachment of a witness by proof of conviction of a felony. [Citations.]" (28 Cal.2d at pp. 319-320.) Because the court is not clairvoyant and could not tell whether the defendant would or would not testify, and because the prosecution in any event could introduce evidence of a prior felony to impeach him, if he did testify, there was no reason to go into the matter at the time of receiving his plea to the charges contained in the information.

In *Yurko* the court referred to "penalties and other sanctions imposed as a consequence of the finding of the truth of the allegation." (10 Cal.3d at p. 860.) *In re Birch, supra,* is merely a manifestation of the same concept in another setting, as it treated the registration requirement as an additional sanction. It is noted that there, unlike this case, the defendant was unrepresented by counsel. As we have seen the impeachment of the defendant is not a sanction resulting from his admission, but a rule of evidence to be applied whether or not the prior felony conviction has been admitted. Moreover, it is clear that the new requirements for arraignment do not apply to consequential effects of the plea or admission. In *People* v. *Superior Court (Giron)* (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636], the court upheld the trial court's discretion in vacating a plea of guilty on the ground that it was made in ignorance

of the fact that the conviction would lead to deportation. The court observed, "We do not deem the thrust of the argument to be that Giron was entitled as a matter of right to be advised of such collateral consequences prior to the acceptance of his plea nor do we so hold. [Citations.]" (11 Cal.3d at p. 797. Cf. *People* v. *Flores* (1974) 38 Cal.App.3d 484, 487-488 [113 Cal.Rptr. 272].) In *People* v. *Searcie* (1974) 37 Cal.App.3d 204 [112 Cal.Rptr. 267], the defendant contended that he should be permitted to withdraw a plea of guilty because he was not advised that his conviction might result in revocation of his probation and a sentence to prison in another case. The court stated, "While it is true that before a guilty plea can be accepted a defendant must be advised of the direct consequences of his plea, such as the permissible range of sentences, the requirement relates to consequences directly involved in the criminal case itself, and not to collateral consequences. Commenting on *Brady* v. *United States* (1970) 397 U.S. 742, 755 . . . the court in *United States* v. *Sambro* (1971) 454 F.2d 918 . . . said 'We note that the accused must be "fully aware of the *direct* consequences." We presume that the Supreme Court meant what it said when it used the word "direct"; by doing so it excluded *collateral* consequences.' (P. 922.)" (37 Cal.App.3d at p. 211, and see examples collected p. 212. Note also *People* v. *Vest* (1974) 43 Cal.App.3d 728, 732-737 [118 Cal.Rptr. 84]; *People* v. *Flores, supra,* 38 Cal.App.3d 484, 487; and *Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891, 893 [111 Cal.Rptr. 126].) Although the use of the admitted prior for impeachment is a matter arising in the same action, it is not related to a penalty or sanction resulting because of the admission itself. It merely affects the nature of the proof the prosecution must produce if the defendant subjects himself to impeachment by becoming a witness.

There was no error in the failure of the trial court to admonish the defendant that the admitted prior might be used to impeach him. We note, however, that the gratuitous giving of such advice at the time the admission is given would prevent the misunderstanding which allegedly occurred here, and preclude an attempt to assert a baseless ground of appeal.

**B**

 Defendant goes further and contends that the admission of the truth of the alleged prior felony conviction was secured through duress and fraud perpetrated by the district attorney and his own counsel. In the course of the proceedings in which the defendant waived his rights and

admitted the priors, his attorney after securing the defendant's acknowledgement that he had discussed the matter with the defendant continued, "Indicating that it would be in terms of going to trial and defending this case, it would be better for you if the jury did not know about the priors, you understand that?" The defendant answered "Yes." The district attorney, when he took over the voir dire, elaborated on the matter as follows: "Let me explain in perhaps a little more detail. You have been charged in the Complaint with, not on the facts—but, the fact you have been convicted on two occasions of felonies. If you went to trial and you denied the priors, the People, who I represent, would bring in documentary evidence to show that, in fact, you were convicted on these two prior dates. [¶] Now, if you wish to admit these two prior convictions, the facts of your convictions will not be brought to the jury's attention for them to determine. You will admit it, and it won't—they won't be able to listen to this testimony." The defendant replied, "Okay fine," and acknowledged that he understood what he had been told.

The defendant took the stand to testify in his own defense without comment, but when he concluded his testimony, the prosecutor indicated that the defense had a motion to make in camera. There followed the discussion reviewed below (part I-C) with respect to which prior convictions could be used for impeachment. Counsel then conferred with his client. After the discussion the defendant sought the ear of the judge and advised him that he wanted to change attorneys "because I not getting represented right, because the other day when the same people was in the office and we talked about the priors and this and that and the other, and—couldn't be used in court. But, the same thing being brought out right now." (See part II-A below.)

Defendant relies upon the general rule stated in *People* v. *Schwarz* (1927) 201 Cal. 309 [267 P. 71], as follows: ". . . it is now well settled in this state that where on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court in which he was sentenced may after judgment and after the time for appeal has passed, if a properly supported motion is seasonably made, grant him the privilege of withdrawing his plea of guilty and of reassuming the situation occupied by him before a plea of any kind was entered." (201 Cal. at p. 314.) Where the prosecution represented that a particular punishment will result, it is error to sentence to a more grievous punishment, and the plea may be withdrawn. (See *People* v. *Griggs* (1941) 17 Cal.2d 621, 624

[110 P.2d 1031]; *People* v. *Campos* (1935) 3 Cal.2d 15, 17 [43 P.2d 274]; *People* v. *Dena* (1972) 25 Cal.App.3d 1001, 1012-1013 [102 Cal.Rptr. 357]; and *People* v. *Grant* (1929) 97 Cal.App. 60, 61-62 [274 P. 1005]. Cf. *People* v. *Griffin* (1950) 100 Cal.App.2d 546, 548 [224 P.2d 47]; and *People* v. *Murphy* (1923) 62 Cal.App. 709, 711 [217 P. 810].) Even if the state is not involved in the representation there are circumstances under which withdrawal of the plea should be granted. "While it is true that mere advice or assurances by a private attorney will not vitiate a plea entered in reliance thereon [citations] we are of the view that a contrary rule should prevail if the statements of the attorney amount to an unqualified factual representation (which is untrue) that the state or a responsible officer thereof, such as a judge of competent authority or a district attorney, has entered into a bargain purporting to commit the state to give the defendant a reward, in the form of immunity or a lesser punishment than he might otherwise receive, in exchange for a plea of guilty, where such representation is apparently substantially corroborated by acts or statements of a responsible state officer, is in good faith relied upon by the defendant, and actually operates to preclude the exercise of free will and judgment on the part of the defendant." (*People* v. *Gilbert* (1944) 25 Cal.2d 422, 443 [154 P.2d 657]. See also *People* v. *Odlum* (1949) 91 Cal.App.2d 761, 770-772 [205 P.2d 1106].)

The issue before the court, at the time the defendant was examined before the court received his admission of his prior convictions, was whether the prosecution would be required to prove them. Neither the court nor the two attorneys were concerned with the issue of whether those convictions could be used to impeach the defendant if he testified. As we have seen, that question is the same whether the priors are admitted or not; the admission merely relieves the prosecution of the burden of proving them. It is clear that the admission by the defendant of itself cannot preclude such use. (*People* v. *Peete, supra,* 28 Cal.2d 306, 320; *People* v. *Chapman* (1947) 81 Cal.App.2d 857, 863 [185 P.2d 424]; *In re Dorsey* (1947) 81 Cal.App.2d 584, 587 [184 P.2d 702].) It, therefore, may be said that there was no misrepresentation. The reference to the priors, both individually, and as part of the aggravation of the petty theft charge was deleted, and the prosecution did not offer any evidence with respect to the priors in its case in chief.

On the other hand, it may fairly be said that defense counsel's statements that he had told his client that it would be better for him if the jury did not know about the priors, and that if he admitted them the

jury would not hear about them, could give rise to the misunderstanding of which defendant made complaint at the trial, and now seeks to make the basis for a reversal of his conviction. Although the district attorney's remarks in questioning the defendant went no further than to deal with the issue of relieving the prosecution of the burden of proving the prior convictions; nevertheless, the statements that the facts of the defendant's convictions would not be brought to the jury's attention for them to determine, and that the jurors would not be able to listen to testimony concerning the prior convictions, can be interpreted as lending an aura of truth to the impression given by defense counsel's statements. We, therefore, may assume that if the issue had been raised in timely fashion, the court should have considered whether the defendant was entitled to withdraw his admission of the prior convictions.

At this stage of the proceedings there is no relief that can be offered the defendant because the record fails to show that he was in any way prejudiced by his alleged misunderstanding.[3] If he laid the basis for a misunderstanding which, under the authorities cited above, would give him the right to withdraw his admissions, the prosecution could still impeach him by proof of the priors through cross-examination or the records themselves, if he elected to testify. If, on discovering his misunderstanding, he elected not to testify because of fear of impeachment, he would lose all opportunity to present his version of the occurrence to the jury, except through the inconclusive testimony of his companion. On such a record it would not be reasonably probable that a different verdict would have ensued. There was no miscarriage of justice, despite the alleged misunderstanding of the defendant. (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 834-837 [299 P.2d 243].)

## C

At the conclusion of the defendant's direct examination his counsel belatedly took up the question as to which prior convictions could be

---

[3]We say "alleged" because there is no way of knowing what may have been discussed between the defendant and counsel before he testified. His request to the court would indicate that he did not know he would be impeached if he took the stand. The factual basis for his contention of misunderstanding and ineffective counsel could only be fully explored in collateral proceedings. (See *In re Hochberg* (1970) 2 Cal.3d 870, 874-875 [87 Cal.Rptr. 681, 471 P.2d 1].) From the fact that without any intervening recess both the prosecutor and the defendant's counsel indicated at the end of the latter's direct testimony that the matter of impeachment had been discussed earlier, it may be inferred that defense counsel knew that the prosecutor would offer to impeach the witness with three prior felonies.

used to impeach him. (See *People v. Rist* (1976) 16 Cal.3d 211, 218-223 [127 Cal.Rptr. 457, 545 P.2d 833]; *People v. Antick* (1975) 15 Cal.3d 79, 96-99 [123 Cal.Rptr. 475, 539 P.2d 43]; *People v. Beagle* (1972) 6 Cal.3d 441, 454 [99 Cal.Rptr. 313, 492 P.2d 1]; *People v. Hughes* (1975) 50 Cal.App.3d 749, 751-754 [123 Cal.Rptr. 767]; *People v. Wingo* (1973) 34 Cal.App.3d 974, 980-983 [110 Cal.Rptr. 448]; and *People v. Hayden* (1973) 30 Cal.App.3d 446, 449 [106 Cal.Rptr. 348] [disapproved in part in *People v. Rist, supra,* 16 Cal.3d 211, 222, fn. 10].)

The prosecutor indicated that he intended to impeach the defendant with his armed robbery conviction, the narcotics offense and an uncharged bad checks offense. Defense counsel stated that he thought the check charge involving intent to defraud would be proper under the *Beagle* rule. (See *People v. Beagle, supra,* 6 Cal.3d 441, 454.) He did object to the use of the other two because they did not involve truthfulness or veracity.

The court ruled that the narcotics conviction would be improper. (Cf. *People v. Hughes, supra,* 50 Cal.App.3d 749, 753.) It gratuitously added, "Now, this is not to say that you cannot inquire as to whether or not he does not have a habit, because he did say that he needed a fix. So, I think it goes to that, not for purposes of impeaching him with a prior felony conviction. But, to go into whether or not he does have a habit, I think he has a right to go into that. In other words, you can ask him if he has the habit."[4] It then overruled the defendant's objection to the use of the armed robbery conviction because that crime involved moral integrity and truthfulness. (See *People v. Rist, supra,* 16 Cal.3d 211, 219-220; and *People v. Hayden, supra,* 30 Cal.App.3d 446, 449.)

Thereupon defense counsel consulted with his client. On their return the defendant requested another attorney. (See part II-A below.) After that request was denied defense counsel renewed his objection to any questioning of the defendant concerning his addiction or use of drugs, because its prejudicial effect would outweigh its slight relevance. He renewed his objection to the use of the robbery conviction for impeachment because it was not the proper type of offense for that purpose. The court denied the motion again.

---

[4]The issue was posed by the testimony of the security officer, who first observed the defendant, and of the assistant security manager that after his arrest the defendant stated that he had taken the sander because he needed a fix, and the testimony of the defendant in which he denied making that statement. He subsequently suggested that the store security officers must have made that up after ascertaining from the police that he had a former narcotic related conviction.

The defense then asked leave to reopen the direct examination so that he could question the defendant about some of those matters before the district attorney did. The court permitted counsel to do so. The defendant then denied that he was using or addicted to narcotics in January 1975 when the offense occurred. He acknowledged that he had been using them in the past and that since August 1974 he had been undergoing weekly tests at a state parole office. When asked if he had ever been convicted of a felony, he answered that he had been convicted of armed robbery as a youngster, and of maintaining a house where narcotics were used in 1971 or 1972, and that he was sent to "CRC Rehabilitation Center" for drug rehabilitation and was on parole. On cross-examination he acknowledged that he pled guilty of a charge of fraud or forgery, or something, in connection with bad checks in 1969.

█ Defendant now asserts that the court abused its discretion in not excluding the proffered evidence of impeachment. He specifically objects to the use of the narcotic-related conviction and the conviction of armed robbery. Since the court ruled that the narcotic conviction could not be used for impeachment, and because it was brought out in the defendant's case in chief, he has no standing to urge error at this stage of the proceeding. (*People* v. *Medina* (1972) 26 Cal.App.3d 809, 820 [103 Cal.Rptr. 337].) This is not a case where the defendant was required to make the best of an erroneous unfavorable ruling by the court. The court had ruled in the defendant's favor. It properly indicated that the prosecution could cross-examine the defendant concerning his habits at the time he allegedly stated he needed a fix, but it did not rule that the conviction could be used for that purpose.

With the hindsight furnished by *People* v. *Rist, supra,* it would appear that the defendant could have requested the court to order the prosecutor to forego questioning on the robbery, and to be content with the use of the unobjected to bad check charge. In that case, decided three and one-half months after the trial in this case, the court gave increased weight to the policy of excluding evidence of similar offenses (here a common thread of larceny) to avoid prejudice. It ruled, as pointed out in the dissenting opinion, "A prior conviction may not be introduced to attack defendant's credibility if the charge is 'similar' to the offense being tried, and if other nonsimilar priors are available." (16 Cal.3d at pp. 220-221 and 224.) Here the record reflects that the jury did hear the defendant's testimony in this case; in *Rist* it did not. The cases criticized in *Rist* (see *id.,* pp. 221 and 222, fn. 10)—including *People* v. *Wingo,*

█

*supra,* and *People* v. *Hayden, supra,*—appeared to leave the matter with the discretion of the trial court. The evidence overwhelmingly points to the defendant's guilt, and he was properly impeached by one prior felony conviction. We, therefore, conclude that the error, if any, in permitting impeachment by reference to the armed robbery was not prejudicial and did not effect a miscarriage of justice. (See *People* v. *Hughes, supra,* 50 Cal.App.3d 749, 754.)

## II

Defendant's attack on his representation by counsel is two-fold. He contends that the trial court erred in not listening to and in not granting his motion to substitute counsel. He also seeks a reversal and a new trial because the representation he did receive allegedly was constitutionally ineffective. Neither of these contentions has merit.

## A

The principles involved are set forth in *People* v. *Marsden* (1970) 2 Cal.3d 118, as follows: "We start with the proposition in *Gideon* v. *Wainwright* (1963) 372 U.S. 335 . . . that criminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel. However, the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. 'A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. . . . [¶] "The right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . . , but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing . . . that the right to the assistance of counsel would be substantially impaired . . . in case the request is not granted, and within these limits there is a field of discretion for the court." ' (*People* v. *Mitchell* (1960) 185 Cal.App.2d 507, 512 . . . quoting 157 A.L.R. 1225, 1226 [other citations omitted].)" (2 Cal.3d at p. 123. See also *Chandler* v. *Fretag* (1954) 348 U.S. 3, 8-10 [99 L.Ed. 4, 9-10, 75 S.Ct. 1]; *People* v.

*Williams* (1970) 2 Cal.3d 894, 904 [88 Cal.Rptr. 208, 471 P.2d 1008] [cert. den. (1971) 401 U.S. 919 (27 L.Ed.2d 821, 91 S.Ct. 903)]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 704-705 [83 Cal.Rptr. 608, 464 P.2d 64] [cert. den. (1972) 406 U.S. 972 (32 L.Ed.2d 672, 92 S.Ct. 2418)]; *People* v. *Gibson* (1976) 56 Cal.App.3d 119, 133 [128 Cal.Rptr. 302]; and *People* v. *Doebke* (1969) 1 Cal.App.3d 931, 938-940 [81 Cal.Rptr. 391].)

Defendant seeks to envelope himself in the cloak of *People* v. *Marsden,* where the court ruled, " . . . a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention 'is lacking in all the attributes of a judicial determination.' (*Spector* v. *Superior Court* (1961) 55 Cal.2d 839, 843. . . .)" (2 Cal.3d at p. 124. See also *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 65-67 [115 Cal.Rptr. 726]; and *People* v. *Groce* (1971) 18 Cal.App.3d 292, 295-297 [95 Cal.Rptr. 688].)

■ Here, as is evidenced by the passage quoted above, the defendant was permitted to state his reason—his alleged misunderstanding concerning the right of the prosecution to impeach him as a witness by use of the admitted prior felony convictions. The law expressly so provides. (See *People* v. *Peete, supra,* 28 Cal.2d 306, 320.) Therefore, no purpose would have been served in substituting a new attorney, even if it be assumed, as cannot be ascertained from the record, that the defendant had cause to complain because his attorney had not advised him of the possibility of such impeachment before he took the witness stand. We find no prejudicial error in denying the defendant's request for a second attorney. (See *People* v. *Williams, supra,* 2 Cal.3d 894, 904-905; *People* v. *Floyd, supra,* 1 Cal.3d 694, 704-705; *People* v. *Gibson, supra,* 56 Cal.App.3d 119, 134; and *People* v. *Doebke, supra,* 1 Cal.App.3d 931, 938-939.)

## B

■ "It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled. [Citations.]" (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]. See also

*People* v. *Shells* (1971) 4 Cal.3d 626, 629-631 [94 Cal.Rptr. 275, 483 P.2d 1227]; *In re Saunders* (1970) 2 Cal.3d 1033, 1041-1043 and 1048-1049 [88 Cal.Rptr. 633, 472 P.2d 921]; *In re Greenfield* (1970) 11 Cal.App.3d 536, 540-544 [89 Cal.Rptr. 847]; *People* v. *Wheeler* (1968) 260 Cal.App.2d 522, 526, fn. 5 [67 Cal.Rptr. 246]; and *People* v. *Welborn* (1967) 257 Cal.App.2d 513, 518-523 [65 Cal.Rptr. 8]. Cf. *In re Yurko, supra,* 10 Cal.3d 857, 866; *People* v. *Beagle, supra,* 6 Cal.3d 441, 447-460; *People* v. *Floyd, supra,* 1 Cal.3d 694, 709-715; *In re Rose* (1965) 62 Cal.2d 384, 489-490 [42 Cal.Rptr. 236, 398 P.2d 428]; *People* v. *Wallace* (1970) 13 Cal.App.3d 608, 615-616 [91 Cal.Rptr. 643]; and *People* v. *Doebke, supra,* 1 Cal.App.3d 931, 937-938.)

■ Defendant complains that his counsel displayed an acute unawareness of the requisite requirements to establish that his client formally understood his rights and waived them. (See *In re Yurko, supra,* 10 Cal.3d 857, 863.) This conclusion is predicated upon the record made when, after announcing the proposed admission of the alleged priors, counsel conducted a voir dire of his client in response to the court's suggestion that he do so. Counsel established that the defendant waived his right to a jury trial on the issues presented, and then asked, "Was there anything further?" The court admonished, "I think you should be more extensive than that in the light of the various cases that have come down." Counsel replied, "Well, Your Honor, it's not the—did you want to—." Explanation of this cryptic reply was precluded by the prosecutor, who took over the voir dire. We cannot say as a matter of law that the foregoing passage indicates that counsel was unaware of his client's rights. Further voir dire indicated that the defendant had talked to his attorney about his rights and fully understood what was going on in connection with his admission of the prior convictions. Even if we were to assume that the attorney was not cognizant of the full panoply of admonitions required by *In re Yurko,* that omission in no way prejudiced the defendant who clearly was advised of his rights.

■ Secondly, it is asserted that counsel was unaware that if defendant admitted the priors and subsequently testified, he could be impeached by those very prior felony convictions. As we have noted above, counsel diligently protected the defendant's rights, by having him admit the prior convictions, so as to obviate the prejudice that would otherwise arise by reference to a prior felony in the substantive offense, by reference to the alleged priors in the information, and by the impact of proof of those felonies in the prosecution's case-in-chief. It was

evident that the attorney not only knew that the defendant could be impeached by the prior felony convictions if he testified, but in fact had discussed the matter with the prosecutor. He displayed a familiarity with the rule of *People* v. *Beagle, supra,* and sought to preclude the use of those priors which he believed should be excluded under that rule. The worst that can be said is that counsel may have failed to impart to his client an understanding that his admission of the prior convictions did not preclude their use to impeach him if he testified. As we have seen above, since at best the defendant could have elected to refrain from testifying, and left the prosecution with a conclusively established case, there was no prejudice in such an omission, if in fact it occurred.

He also complains that counsel did not make arrangements to attempt to secure a witness concerning the defendant's abstention from drugs, until after he had originally rested. Counsel cannot be faulted for not preparing to rebut the prior narcotic-connected conviction insofar as it might be used to impeach the defendant's credibility, because in fact the court refused to permit it to be used for that purpose. The issue arose because of the nature of the admissions attributed to defendant concerning his motive for taking the sander. Counsel diligently sought to prevent cross-examination of the defendant concerning his use or addiction to drugs. Whereupon it was after some evidence had been adduced on direct and cross-examination that counsel, after stating he rested, immediately retracted and sought leave to make a phone call concerning a further witness. Thereafter, defendant and his counsel sought a continuance to get his personal parole officer who was unavailable (see part III below), but, according to the record, they did secure a supervising parole officer with the defendant's records. Whatever shortcomings there may have been in counsel's preparation to meet this peripheral issue, no prejudice resulted to defendant.

Finally, it is alleged that the defense furnished defendant was inadequate because his attorney permitted the prosecutor to ask numerous leading questions. Without reference to the record it is impossible to determine the extent and prejudicial effect of that alleged shortcoming. We note that objecting for objection's sake is not usually a profitable trial tactic.

On our review of the record we conclude that counsel did the best he could with the case of a shoplifter who was caught red-handed. In no sense was defendant's trial reduced to a "farce or sham" (*People* v.

*Ibarra, supra,* 60 Cal.2d at p. 464) by any shortcomings of counsel; nor does it appear that any crucial defense was withdrawn from the case by counsel's failure to investigate carefully all defenses of fact and law available to the defendant.

## III

Finally, defendant contends that the court erred in not granting him a continuance to secure a material witness. The supervising parole officer testified that 25 tests taken between November 1974 and October 1975, including three tests around the date of the alleged offense, all proved negative with respect to defendant's use of narcotics. Defendant had requested that his parole officer be called as a witness, and before proceeding with the supervising parole officer, he moved the court for a continuance to secure his own parole officer because he "would be better in terms of testifying to this," because the supervising officer, although he had the records, "doesn't have the personal knowledge as to [the defendant] that the parole officer does have," and because "it would be more helpful to have the man who is personally acquainted with [defendant] do the testifying." The court denied the motion.

"The granting or denial of a motion for a continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion. In the lack of a showing of an abuse of discretion or of prejudice to the defendant, a denial of his motion for a continuance cannot result in a reversal of a judgment of conviction. [Citations.]" (*People* v. *Laursen* (1972) 8 Cal.3d 192, 204 [104 Cal.Rptr. 425, 501 P.2d 1145]. See also Pen. Code, § 1050; *People* v. *Collins* (1925) 195 Cal. 325, 322-333 [233 P. 97]; and *People* v. *Guerin* (1972) 22 Cal.App.3d 775, 783 [99 Cal.Rptr. 573] [cert. den. (1972) 409 U.S, 859 (34 L.Ed.2d 105, 93 S.Ct. 145)].)

Here it appears that the testimony which the defendant sought to elicit from his personal parole agent would be cumulative of that elicited from the supervisor. In *People* v. *Collins, supra,* the court observed: ". . . in order to obtain a continuance, the affidavit should state that the facts expected to be proved by the absent material witness cannot be otherwise proved. It is, therefore, 'not prejudicially erroneous

to refuse a continuance on account of the absence of a witness, if the substance of the testimony expected to be elicited from him has been given by another witness.' (6 Cal.Jur. 993.)" (195 Cal. at p. 333. See also *People* v. *Laursen, supra,* 8 Cal.3d at p. 204; and *People* v. *Guerin, supra,* 22 Cal.App.3d at p. 783.)

No abuse of discretion has been demonstrated in the denial of a continuance.

The judgment, order admitting the defendant to probation, is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 19, 1977.