Filed 10/7/15  P. v. Jarvis CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073706 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F07296) |
| v. | |
| JEFFERY SCOTT JARVIS, | |
| Defendant and Appellant. | |

---

While Celina Chavez and Jonathan Montoya were in the process of moving out of their home, they discovered an intruder had broken in, ransacked the place, and absconded with many of their possessions.  An information charged defendant Jeffery Scott Jarvis with burglary and receiving stolen property.  (Pen. Code, §§ 459, 496, subd. (a); all further statutory references are to the Penal Code.)  A jury found defendant

guilty on both counts. Sentenced to seven years in state prison, defendant appeals, challenging the sufficiency of the evidence on both counts, alleging instructional error, and arguing the court abused its discretion in denying his request to continue the sentencing hearing. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Burglary

In October 2012 Chavez and Montoya began moving out of their shared home. Their neighbor was Tracy Bowser; a fence separated their backyards. At least four days before Chavez and Montoya began their move, defendant began staying with Bowser. Montoya stated defendant was always around, and Chavez had seen defendant outside Bowser's residence "a lot." While they were moving, Chavez saw defendant sitting on a bicycle and watching her load things into the moving van. Defendant was with a woman, but it was not Bowser.

In the evening, Chavez and Montoya finished the day's moving. After locking the doors, the couple left for the night.

They returned in the afternoon the following day. As Chavez opened the front door, she heard the back door creak and a commotion in the backyard. Chavez described the noise as a "pitter patter" and heard the sound of something being dropped and a dog barking. Montoya saw the back door "closing a little bit" and heard footsteps. According to Montoya, it sounded like someone leaving the house.

Chavez called out "hello," but there was no response. The kitchen window was broken and the glass was inside the house, and many of Chavez's possessions had been moved. Items were piled next to the open back door; other possessions were in the backyard and piled next to the fence separating Chavez's and Bowser's yards.

Shortly after entering the house, Montoya walked out to the backyard. He saw defendant in Bowser's yard jumping up to see into Chavez's yard. Defendant asked

2

Montoya what happened and said he had heard a dog barking all night. Montoya told defendant, "It looks like something happened here."

Montoya noticed three loose boards in the fence, which would have left a three-foot by six-foot gap in the fence. When Montoya looked at the fence the day before, he had not noticed any loose or partially removed fence boards. After Montoya saw the fence, defendant grabbed the top of the boards and said, "These are loose." Defendant began kicking the boards, attempting to put them back into place.

Inside the house, Chavez heard the pounding and looked outside. She saw defendant trying to kick the loose fence boards back into place. Chavez kept a small dog in her backyard, so she was concerned about the security of the fence. She had never previously found a loose or missing board.

After Chavez called 911, Officer Tobi Hitchcock arrived. Hitchcock saw the broken kitchen window and found an open window in a bedroom. In the backyard, Hitchcock found several personal items piled up against the fence. She also saw the loose fence boards, which she described as being in place but not fully attached to the support board.

Hitchcock and another officer went to the Bowser residence. They called into the open front door and asked for someone to come outside. Defendant came out of the house, and Hitchcock asked him his name and birth date. Defendant told her his name was Paul Hall and his date of birth was October 15, 1957. A records check failed to locate anyone with that name and birth date.

Hitchcock asked defendant for identification. He pulled out a silver case from his pocket and said he used to keep his identification in a case just like it, but it had been stolen. He eventually pulled a wallet out of his pants, and pieces of paper with the name "Jeffery Jarvis" on them fell out. Hitchcock asked defendant if he was Jeffery Jarvis, but defendant said he was not. A computer search of the name Jeffery Jarvis unearthed a photo of defendant.

3

Bowser came out of the house. She said she had been sleeping and did not know what was going on. Bowser gave permission for the officers to search her home. Hitchcock found numerous items belonging to Chavez inside Bowser's house, including a purse, a computer monitor, jewelry boxes, clothing, a keyboard, a stuffed animal, and nail polish. She found Chavez's belongings in the living room, kitchen, and sole bedroom. Chavez's stereo was hooked up in Bowser's living room, playing music. The search failed to recover Chavez's missing jewelry, a computer tower, clothing, and shoes.

**Defense Case**

Officer Lee Yonemura accompanied Officer Hitchcock when the two entered Bowser's residence. When Yonemura asked defendant for permission to enter the house, defendant said he would get the owner of the house. He returned with Bowser, who gave the officers permission to enter. The officers found defendant's backpack next to a table in the living room. Although the backpack did not contain any of Chavez's property, her jewelry box and computer monitor were found in and on the nearby table.

Defendant also presented testimony by a neighbor of Bowser, Shelly Ann Jones. The day of the robbery, Jones returned home and found Christina Thompson, a guest of Jones's roommate, in the kitchen. Thompson asked Jones if she wanted to buy several items similar to those taken from Chavez, including a computer monitor, nail polish, makeup, and jewelry. Thompson did not have the items with her. Jones was not interested and left to finish some work she was doing across the street. When Jones returned, Thompson was still in the house. Jones saw the police across the street and told Thompson that if she had done something, she might want to "face up to what it is you've done." Thompson said she got the items from her aunt.

**Subsequent Events**

An information charged defendant with burglary and receiving stolen property. The information further alleged that defendant had suffered one prior strike (§§ 667,

4

subds. (b)-(i), 1170.12) and five additional prior convictions within the meaning of section 667.5, subdivision (b).

A jury found defendant guilty on both counts. In a bifurcated trial, the trial court found all prior conviction allegations true. The court sentenced defendant to six years for burglary, six years for receiving stolen property, which it stayed under section 654, and one year on a prior conviction enhancement, for a total of seven years in state prison. Defendant filed a timely notice of appeal.

## SUFFICIENCY OF THE EVIDENCE

**Burglary**

Defendant challenges the sufficiency of the evidence supporting his conviction for burglary. According to defendant, the evidence established that Chavez and Montoya heard something when they entered the residence, but substantial evidence does not support a finding that the noise they heard was a person leaving through the back door, much less that the person was defendant.

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 (*Rodriguez*).)

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Under section 459, burglary requires an unlawful entry with the specific intent to commit a felony. However, a defendant may be guilty of burglary regardless of whether any felony or theft is actually committed, or the crime actually committed is different

5

from that originally contemplated. The carrying away of stolen property is not an element of burglary. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) Burglary requires entry with the proscribed intent; such entry constitutes the completed crime of burglary regardless of whether any felony or theft is actually committed. (*People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18.)

The intent required for burglary may be inferred from facts and circumstances. (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741; *People v. Moody* (1976) 59 Cal.App.3d 357, 363.) The mere possession of stolen property will not alone support a conviction for theft of property; however, the possession of recently stolen property is so incriminating that only slight additional evidence is necessary to sustain a burglary conviction. The jury determines, in light of all the evidence, whether or not such an inference should be drawn. (*People v. McFarland* (1962) 58 Cal.2d 748, 754-755.)

Similarly, intent to burglarize can be shown by evidence of unlawful entry, flight from the scene, and failure to provide a plausible reason for being on the premises. Even if no crime is committed after entry, flight and the lack of an explanation for being on the premises provide sufficient evidence for the jury to convict a defendant of burglary. (*People v. Martin* (1969) 275 Cal.App.2d 334, 339.)

Here, substantial evidence supports defendant's conviction for burglary. Although defendant attempts to diminish their testimony, both Chavez and Montoya stated they heard noises consistent with someone leaving the premises as they arrived. Upon opening the front door, Chavez heard the back door, which they had left locked, creak; she also heard a "pitter patter" and the sound of something being dropped. Montoya saw the back door "closing a little bit" and heard footsteps that sounded like someone leaving the house.

Defendant argues neither witness actually saw anyone running out the back door and their testimony amounts to mere "suspicion," not evidence. However, substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable

6

jury could find defendant guilty beyond a reasonable doubt. (*Rodriguez*, *supra*, 20 Cal.4th at p. 11.) Chavez and Montoya returned to find a door they had left locked slowly closing and heard sounds consistent with someone leaving. This testimony, given by two percipient witnesses, supports the jury's conclusion that a person fled through the back door.

In addition, the evidence at trial supported the jury's determination that the person who fled entered the house with the intention to commit a felony. Chavez found her kitchen window broken from the outside and her possessions missing or strewn around the house and backyard. Her fence had been tampered with, boards loosened, allowing access to her property.

Finally, the evidence before the jury supported its finding that defendant was the person who entered Chavez's home with the intent to commit a felony. The day before the burglary, Chavez saw defendant sitting in Bowser's driveway, watching the move in progress. The day of the burglary, a mere two minutes after Chavez and Montoya heard someone run out of the house, defendant appeared in the backyard next door. Defendant jumped up and down, looking over the fence into Chavez's yard. After Montoya discovered the fence's loose boards, which allowed access onto Chavez's property, defendant attempted to kick the boards back into place. When officers questioned defendant shortly after responding to the burglary, defendant claimed he was Paul Hall and denied his true identity. At the time Montoya and Chavez heard someone leave the house, Bowser was asleep in her residence.

Reviewing the record in the light most favorable to the jury's verdict, we find credible and reasonable evidence in support of the verdict. Although defendant questions the witnesses' testimony, we do not reassess the credibility of Montoya and Chavez, and we draw all inferences from the evidence to support the jury's verdict.

**Receiving Stolen Property**

Defendant also challenges the evidence in support of his conviction for receiving stolen property. According to defendant, only his backpack was found in Bowser's living room, and mere access or proximity to stolen property is insufficient to sustain a conviction for receiving stolen property.

A conviction for receiving stolen property requires that (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant received, concealed, or withheld the property. (§ 496; *People v. Grant* (2003) 113 Cal.App.4th 579, 596.) Possession may be constructive or actual. Actual possession refers to a defendant's exercise of direct physical dominion and control over the stolen property. Constructive possession occurs when the defendant maintains control or a right to control the property; possession may be imputed when the property is found in a place which is immediately and exclusively accessible to the defendant and subject to his or her dominion and control, or to the joint dominion and control of the defendant and another. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 621-622; *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417.)

Possession may be established through circumstantial evidence and resulting reasonable inferences. However, mere presence near the stolen property or access to where the property is found is not sufficient evidence of possession sufficient to sustain a conviction for receiving stolen property. (*People v. Land* (1994) 30 Cal.App.4th 220, 224-225.)

Defendant argues he had neither actual nor constructive possession of any of Chavez's property. He did not knowingly exercise a right to control the stolen property found in Bowser's house. Although defendant had been staying at Bowser's house for four or five days, he did not live there. "At most the evidence established [defendant] was an occasional guest, and had been staying there for a couple of days at the time the

8

stolen property was discovered." Therefore, the evidence was insufficient to support the conviction.

We disagree. Defendant told officers he had only been staying at Bowser's house for the last four days. However, Montoya believed defendant was a permanent resident because he was "always" around. Chavez testified she saw defendant outside Bowser's house "a lot." When officers responded to the 911 call and asked for someone to come out of Bowser's house, defendant complied. During their search of Bowser's residence, officers found defendant's backpack next to a table containing some of the stolen property.

These facts, coupled with defendant's presence in Bowser's yard minutes after Montoya and Chavez heard someone leaving the burglarized home, defendant's effort to cover up the hole in the fence, and his subsequent denial of his true identity, support the jury's finding that defendant constructively possessed Chavez's stolen property. Again, we review the evidence in the light most favorable to the jury's findings; we do not judge the credibility of witnesses, and we draw all inferences in support of the jury's verdict. Under this rubric, we find sufficient evidence supports defendant's conviction for receiving stolen property.

## INSTRUCTIONAL ERROR

The trial court must instruct, even in the absence of a request, on the general principles of law relevant to the issues raised by the evidence. These general principles refer to those principles closely and openly connected with the facts before the court, and necessary to the jury's understanding of the case. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715.) Before giving an instruction, the court must find legally sufficient evidence in the record to support the finding or inference that the instruction permits. (*People v. Hannon* (1977) 19 Cal.3d 588, 597.) We assess the jury instructions as a whole to determine whether there is a reasonable likelihood the jury applied the instruction in a way that violated the defendant's constitutional rights. (*People v. Campos* (2007)

9

156 Cal.App.4th 1228, 1237.) We review the instructions de novo. (*People v. Hamilton* (2009) 45 Cal.4th 863, 948.)

**Instruction on Aiding and Abetting**

The trial court instructed the jury on aiding and abetting pursuant to CALCRIM Nos. 400, 401, and 1702. Defendant challenges the instruction, arguing no evidence supports the giving of the instruction.

### *Background*

The court instructed on the general principles of aiding and abetting: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." (CALCRIM No. 400.)

In addition, the court instructed: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1. The perpetrator committed the crime;

"2. The defendant knew that the perpetrator intended to commit the crime;

"3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

"And

"4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

"Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

10

"If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor.  However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her, an aider and abettor." (CALCRIM No. 401.)

Finally, the court instructed:  "To be guilty of burglary as an aider and abettor, the defendant must have known of the perpetrator's unlawful purpose and must have formed the intent to aid, facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure."  (CALCRIM No. 1702.)  Defendant did not object to any of these instructions.[1]

*Discussion*

Contrary to defendant's characterization of the evidence, we find substantial evidence in support of the court's instructions on aiding and abetting.  At trial, defendant presented evidence that Thompson was at Jones's house, across an intersection and two doors down from Bowser's house, when Chavez discovered the burglary.  Thompson tried to sell Jones several items recently stolen from Chavez's residence.  Defendant argued Thompson alone burglarized Chavez's house.  In response, the prosecution argued that even if the jury believed Thompson was involved in the burglary, defendant was guilty as an aider and abettor.

The day of the burglary, defendant sat in the next driveway, accompanied by a woman who was not Bowser, watching Chavez move.  The next afternoon Chavez discovered the burglary.  Officers found some of Chavez's stolen items in Bowser's house, where defendant was staying, and in the same room as defendant's backpack.

---

[1]  The People contend defendant's failure to object forfeits his claim.  However, in order to forestall a potential claim of ineffective assistance of counsel, we shall address the issue.

11

Shortly after Chavez discovered the theft, defendant appeared in Bowser's backyard and attempted to fix the fence boards that allowed access to Chavez's yard. When questioned by police, defendant gave a false name. Given the evidence, the jury could conclude that if defendant was not the direct perpetrator, he knew of the perpetrator's unlawful purpose and acted with the intent to aid in the burglary. We find no error in the instructions on aiding and abetting.

**Failure to Give a Unanimity Instruction**

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

The " 'requirement of unanimity as to the criminal act "is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." [Citation.] . . . "The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count." [Citation.]' " (*People v. Norman* (2007) 157 Cal.App.4th 460, 464-465 (*Norman*).)

According to defendant, the prosecution presented at least two distinct entries in support of the burglary charge: an entry by defendant on October 29 and an entry by defendant and Thompson, or just Thompson, sometime between October 28 and October 29. Each entry constituted a separate criminal act. Because the prosecution failed to clearly elect which of these entries constituted the burglary charge, the court erred in failing to give a unanimity instruction sua sponte.

12

The prosecution acknowledges there may have been multiple entries, but the entries were close in time and part of a continuous course of conduct comprising a single common plan and thus fall within cases treating multiple thefts committed pursuant to one intention, one general impulse, and one plan as one theft. (*People v. Bailey* (1961) 55 Cal.2d 514.) Defendant argues burglary is different from simple theft and cites *People v. Washington* (1996) 50 Cal.App.4th 568 (*Washington*) as so holding. In *Washington* the defendant made one entry into an apartment and remained in the vicinity before effectuating a second entry into the same apartment. Relying on *Bailey*, the defendant argued that as a matter of law he could be convicted of only one burglary. (*Washington*, at p. 574.)

The *Washington* court disagreed, pointing out that although in many cases the goal of a burglary is theft, burglary occurs regardless of whether a theft is accomplished or even attempted. More importantly, the conduct described and proscribed by section 459 is a single act: entry. Under section 459, burglary consists of an unlawful entry with the intent to commit a felony and therefore is complete upon entry with the requisite intent. Multiple entries give rise to multiple offenses, though punishment may be limited by section 654. *Washington* thus supports defendant's assertion that each entry into a residence with the intent to commit a felony constitutes a separate burglary offense and thus a unanimity instruction was required.

However, not every failure to give a unanimity instruction constitutes reversible error. The harmless error standard of *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705] applies and the question is whether the error was harmless beyond a reasonable doubt. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 (*Thompson*).) The failure to give a unanimity instruction is harmless where there is no reasonable possibility of a disagreement among the jurors regarding the specific acts that could support the charged offense. (*People v. Napoles* (2002) 104 Cal.App.4th 108, 119;

13

*People v. Jenkins* (1994) 29 Cal.App.4th 287, 299; *People v. Burns* (1987) 196 Cal.App.3d 1440, 1458.)

Here, the jury unanimously found true all of the elements of burglary despite defendant's argument he was not involved as either the direct perpetrator or an aider and abettor. We have rejected defendant's claim that the evidence was insufficient. His defense did not rest in the timing of the entry and there is no reasonable possibility of disagreement regarding the acts underlying the offense. There is simply no reason to believe that a unanimity instruction would have influenced the jury's verdict. Thus, even accepting the application of the *Washington* holding to our case, any error in failing to give a unanimity instruction was harmless.

**Instruction on Consciousness of Guilt**

Defendant also argues the trial court erred in instructing on defendant's consciousness of guilt. After the trial court stated its intention to instruct pursuant to CALCRIM No. 362, defense counsel objected, arguing that giving a false name was not a statement relating to the charged crime. Defendant renews his objection on appeal.

The court instructed the jury: "If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt.

"If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself." (CALCRIM No. 362.) The prosecution, during closing argument, referred to defendant's false statements regarding his identity, arguing defendant did not want officers to know who he was because he had committed the burglary.

Defendant argues the court erred in giving CALCRIM No. 362 because defendant's giving of a false name did not relate to any of the charged crimes. We

14

disagree. The issue is whether defendant's lie is relevant and probative in determining his guilt. A lie does not have to concern details of the crime in order to establish a consciousness of guilt and permit reasonable inferences deducible from that. An innocent person with a jaded past could feel compelled to lie about his identity to avoid suspicion, but a guilty person, particularly one caught in circumstances suggesting his complicity, could feel an even greater compulsion to lie about his identity. The instruction did not require the jury to find the lie was incriminating. Rather, the jury was told that such "conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt."

CALCRIM No. 362 sufficiently protects against conviction based on the defendant's false statements and is neither argumentative nor biased in the prosecution's favor. (*People v. Stitely* (2005) 35 Cal.4th 514, 555.) "The inference of consciousness of guilt from willful falsehood or fabrication or suppression of evidence is one supported by common sense, which many jurors are likely to indulge even without an instruction." (*People v. Holloway* (2004) 33 Cal.4th 96, 142.)

The evidence at trial supports the trial court's instruction on defendant's consciousness of guilt. After officers responded to the report of a burglary at Chavez's house, they contacted defendant outside the house where the stolen goods were found. Defendant, who had been staying in the house and who was found in the yard by a broken fence shortly after the burglary was discovered, answered the officers' questions. He gave the officers a false name. The false statement occurred just after the discovery of the burglary and a reasonable juror could conclude that it reflected defendant's consciousness of guilt.

### MOTION TO CONTINUE SENTENCING HEARING

Finally, defendant argues the court erred in denying his motion for a continuance. According to defendant, he requested the continuance in order to allow defense counsel to investigate potential new evidence from Bowser and Thompson, who were unavailable

15

at trial.  Defendant labels the trial court's denial "arbitrary and unreasonable" and argues it deprived him of due process.

**Background**

Following the jury's verdicts, defendant brought a motion to continue the sentencing hearing, stating Thompson, who had been unavailable, had recently been taken into custody.  Defendant argued Thompson might provide evidence regarding the burglary that could exculpate him.  According to defendant, Thompson might "admit that she was the principal and explain who, if anybody, helped her."  He requested a four- to six-week continuance to investigate.

The trial court asked defendant how he could be sure that a four- to six-week continuance would accomplish this purpose.  The court asked defense counsel what assurances she could give that four weeks would be sufficient:  "[T]hat you won't be back here in four weeks and say, gee, Miss Thompson's proceedings have been delayed.  Her trial's not set till late this year, whatever it be, that there won't be a necessity for prolonged continuances?"  Defense counsel answered:  "There -- I can't, I can't provide any assurance now, but what I can say is that at least we can figure out the kind of position we're in by that point."  The court asked:  "By what point, in four weeks?"  Defense counsel responded:  "Yes, in four to six.

"There are cases that resolve fairly quickly.  I don't know whether Miss Thompson's case is one of those or not.  I do not know what her crime report looks like.

"I do not know if she has been interrogated or made any statements yet.

"I don't know, but I think four to six weeks would give me time to do investigation, and then I would report back.

"And either we would have what we need or I would make another request and let the Court make a ruling at that point."

In response, the court noted the requirement that there be new evidence actually discovered that is material to the defendant and could not have been produced during the

16

trial. In addition, the court found that the issue of whether defendant was a principal or an accomplice was before the jury. The court concluded that defense counsel's offer of proof "is not a firm offer or demonstration before this Court that there exists new evidence, but only that there might be and, as you say, you would be speculating as to what might or might not happen with Miss Thompson.

"And certainly the district attorney has clearly explained that as well.

"And even if the Court were to give you a reasonable continuance, there is no assurance for the reasons stated by the district attorney that the judgment and sentencing in Mr. Jarvis' case would postpone anytime soon if Miss Thompson were to demand her right to jury trial and to representation.

"Just because an unjoined codefendant is apprehended at some time before imposition of judgment and sentencing does not in this Court amount to or equate to legal cause for continuing the judgment and sentencing.

"Should in fact your office through your efforts or someone on behalf of Mr. Jarvis discover material new evidence that tends to exculpate him, there are collateral avenues of relief available to him.

"So respectfully, the Court denies the request for a continuance."

**Discussion**

The party challenging the denial of a continuance bears the burden of establishing that the court abused its discretion. An order denying a continuance is seldom successfully attacked. A trial court abuses its discretion only when the court exceeds the bounds of reason, all circumstances being considered. (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

A continuance may be granted only upon a showing of good cause, and the trial court possesses broad discretion to determine whether good cause exists. A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence. (§ 1050, subd. (e); *People v. Alexander* (2010) 49 Cal.4th 846,

17

934-935; *People v. Roldan* (2005) 35 Cal.4th 646, 670.) In making this determination, the trial court may consider not only the benefit anticipated by the moving party, but also the likelihood such a benefit will result and the burden on the court. A posttrial continuance of a sentencing hearing is not warranted when it is unclear that a reasonable continuance would produce any material evidence. (*People v. Snow* (2003) 30 Cal.4th 43, 77; *People v. Hill* (1976) 64 Cal.App.3d 16, 34-35.)

Defendant argues that, in requesting the continuance, defense counsel sought to "investigate potentially exculpatory evidence made newly available by the completion of Bowser's criminal matter, and the location of Thompson who had just been taken into custody at the time of the sentencing hearing. The purpose of the investigation was to interview the witnesses to determine whether either of them could exclude [defendant's] participation in the crimes, and if so, to prepare a motion for new trial." Therefore, a continuance would be "useful," and the evidence would be material and could be obtained within a reasonable time.

The trial court considered this argument and found it wanting. As the court pointed out, defense counsel was presenting only speculation that Thompson would be willing to provide actual new evidence pertinent to defendant's case. Nor could defense counsel assure the court that any possible evidence could be obtained within a reasonable time. In requesting the continuance, defense counsel could not provide the court with the assurance that four to six weeks would be sufficient, but stated "at least we can figure out the kind of position we're in by that point," leaving the possibility of a second request for a continuance. Given the speculative nature of the evidence sought and the open-ended time frame acknowledged by defense counsel, the trial court did not abuse its discretion in denying the motion for a continuance.[2]

---

[2] Since we find no errors on the part of the trial court, we reject defendant's claim of cumulative error.

18

## DISPOSITION

The judgment is affirmed.

                                             _____RAYE_____, P. J.

We concur:

_____NICHOLSON_____, J.

_____BUTZ_____, J.

19